## DENNIS O. DRISCOLL *vs.* CITY OF TAUNTON.

Bristol.    October 24, 1893. — February 27, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Abatement of Nuisance — Measure of Damages — Jurisdiction — Estoppel.*

The fact that Pub. Sts. c. 80, § 35, provide that any person aggrieved by the decision of the board of health in its estimate and award of damages upon proceedings brought pursuant to Pub. Sts. c. 80, §§ 28–33, for the abatement of a nuisance, consisting of wet and spongy lands injurious to health, " may make complaint to the county commissioners for the county," does not prevent such person from resorting to the Superior Court under the provisions of Pub. Sts. c. 49, § 105.

Upon proceedings by the board of health pursuant to Pub. Sts. c. 80, §§ 28–33, for the abatement of a nuisance consisting of wet and spongy lands injurious to health, the measure of damages for land upon which it has been necessary to enter to abate the nuisance is the difference between its fair market value before the act of the board and such value afterwards.

Upon a petition for the assessment of damages to land in consequence of proceedings pursuant to the Pub. Sts. c. 80, §§ 28–33, for the abatement of a nuisance consisting of wet and spongy lands injurious to health, any nuisance on the land upon which it was necessary to enter, in order to be chargeable to the city or town, must be the result of the act of the board of health, and, unless such act results in a nuisance, evidence of a subsequent nuisance is immaterial.

Upon a petition for the assessment of damages to land upon which it was necessary to enter to abate a nuisance consisting of wet and spongy lands injurious to health, the petitioner and witnesses called by both parties testified that at the hearing before the board of health the statement of the petitioner that he should claim no damages was not absolute, but was qualified by the words " if the board of health put a stone drain under ground through his premises." There was also evidence that, while the drain was being dug, the petitioner objected on the ground that it was not being put under ground. The petitioner denied making statements to persons in charge of the work and acting for the board of health to the effect that he should make no claim for damages if an open drain were dug, or that, as contended by the respondent, the course of the drain while the work was in progress was changed at his request. On this state of facts the respondent requested the judge to rule that, if the petitioner stated to the board of health, or any other person, that he should claim no damages for the construction of the drain as laid, this was evidence that he suffered no damage therefrom beyond the benefits accruing to him, and was an admission by him that he had no claim for damages against the city. The judge refused so to rule, and ruled in substance that if the petitioner had stated to the board of health that he should claim no damages for the construction of the drain as laid, and the board was induced thereby to lay the drain, he is now estopped from claiming damages, and if the board with the consent or at the request of the petitioner substituted another line or method differing from the one first proposed by it, the petitioner claiming no damages, he cannot now claim damages. *Held*, that the respondent had no ground of exception. *Held*, also, that a statement that a person will claim

no damages is not necessarily evidence that he has suffered no damages beyond the benefits accruing from the act, nor an admission that he had no claim for damages at the time of making the statement, but it may be rather the assertion of a wrong sustained coupled with a statement that he will not seek redress for it.

PETITION, for the assessment of damages for the construction and maintenance of a drain over the land of the petitioner by the board of health of the city of Taunton. Trial in the Superior Court, before *Hopkins*, J., who allowed a bill of exceptions, in substance as follows.

The respondent filed a motion to dismiss the petition, on the ground that the Superior Court did not have jurisdiction. The motion was overruled, and the respondent excepted.

It appeared in evidence that the board of health of the respondent city, acting under the provisions of Pub. Sts. c. 80, §§ 28–33, on May 6, 1891, on the petition of Richard Caffrey and others, abated a nuisance consisting of wet and spongy lands injurious to health in that city, and on May 29, 1891, in accordance with § 33, made due return to the city clerk of its doings in the premises. The return stated that from a given point " a ditch two feet in width has been dug to intersect a ditch already crossing southwest portion of land belonging to Dennis O. Driscoll." The expense of abating the nuisance and of maintaining the drain in repair was apportioned among various persons, but no damages were awarded to any one. There was no evidence that the petitioner had made complaint to the county commissioners.

There was evidence tending to show that at the hearing on the petition for the abatement of the nuisance it was proposed to dig an open trench diagonally across the land of the petitioner, from the northwest corner to an open ditch in the middle of it, and to the place where a stream made its exit therefrom; that this petitioner was present at the hearing, and that, when others over whose lands it was proposed to extend the drain objected and claimed damages, he stated that he did not object to the drain crossing his land and did not see why others should, and stated that he should make no claim for damages, and agreed to the use of his land without charge; that at other times he stated to one Dean, the engineer in charge of the work, and to one Macomber, a member of the board having supervision of it, that he had no objection to the work, and would not claim damages ;

that from time to time, while the drain was being dug, he was present, and stated to both Dean and Macomber that he preferred to have the drain laid next to the fence on his back line; that the drain was accordingly so laid to the southwesterly corner of his land, to a ditch previously maintained by him along the southerly side of his land to a stream, and it has since been thus maintained; and that at no time while the work was in progress did the petitioner object to the course of the drain or to the work being done, but he agreed to the changes made. It also appeared from the testimony of the petitioner, and from the testimony of witnesses called by both parties, that at the hearing the petitioner stated that he would make no claim for damages " if the board of health put a stone drain under ground through his premises," and the petitioner further testified that he did object when the drain was being dug because it was not put underground, and that he did not at any time state to Dean, Macomber, or any one else, that he would not claim damages if an open drain was dug.

The jury viewed the premises, and it appeared that adjoining the petitioner's land on the northerly side and for one hundred and fifty feet on the westerly side extending to his southwesterly corner was a tract of swampy land above the level of the petitioner's land, abounding in springs, from which water flowed to a greater or less degree at all seasons upon the petitioner's land, and that some of these springs and lines of surface flowage were cut off and intercepted by the ditch dug along his westerly line. It further appeared, that in the August following, in accordance with an arrangement made at the hearing in May, upon another petition, the board of health cleared, widened, and deepened the drain formerly maintained by the petitioner along the southerly line of his land, from the point where the drain first constructed entered it to the stream into which it flowed, and also cleared the stream for some distance below the point where it left the petitioner's land. It was further shown that a small stream entered the petitioner's land from an adjoining swamp at its lower southwest corner, and that near that corner and about three feet from the drain, on the land of an adjoining owner, stood a barn in which horses were kept.

The petitioner offered evidence tending to show that noxious

odors issued at various points from the drain first constructed by the board, and from the drain which was opened and enlarged in the following August, and that in the latter there was stagnant water covered with scum before as well as after the erection of the barn on the adjacent land. The respondent introduced evidence tending to show that the water issuing from the drain pipe at its lower extremity on the petitioner's land was clear water, without color or odor, and that no sewage entered into the drain constructed by the board, or into the water conducted through it.

The respondent requested the judge to rule:

" 1. The petitioner does not allege or offer any evidence that he has ever made any complaint to the county commissioners. The Pub. Sts. c. 80, § 35, having specially provided that the party aggrieved by an order of the board of health shall make complaint to the county commissioners, and that thereupon the same proceedings shall be had as in cases where parties are aggrieved by the award of damages by selectmen for land taken for a town way, make such an application to the county commissioners requisite before trial by jury can be had, and therefore this proceeding cannot be maintained.

" 2. If the benefits which accrued to the petitioner by the construction of the drain, by relieving his lands from surface water or from the percolation of water through his lands, or by intercepting waters flowing from adjoining lands, equalled or exceeded the damage accruing to him by the construction of such drain, he cannot recover in this action.

" 3. If the petitioner stated to the board of health, or any other person, that he should claim no damages for the construction of the drain as laid, this is evidence that he suffered no damage therefrom beyond the benefits accruing to him therefrom, and is an admission by him that he had no claim for damages against the city.

" 4. If the petitioner stated at the hearing before the board of health that he should claim no damages for the construction of the drain as then proposed by said board, and did thereby consent to the laying of this drain without claiming damages, and the board of health did thereafter so construct such drain, without any revocation of such consent made to the board, he cannot

recover in this action. Waiving the claim for damages, he cannot now assert it with any just effect. The petitioner can waive such claim by parol.

" 5. The damages in this case are to be estimated by considering what it would cost the petitioner to relieve himself from any injury he may have suffered by the construction of the drain; in no event can it exceed the value of the land taken for such construction, and the damage to his remaining land and to himself by reason of such construction. The city is bound to keep the drain constructed by the board of health open and unobstructed at all times hereafter, and ever since its construction; and for any neglect in the past, or for any future neglect in this respect, it is not liable in this action."

The judge gave the second ruling requested, but refused to give the others, and instructed the jury: " If the petitioner stated to the board of health that he should claim no damages for the construction of the drain as laid, and the board was induced thereby to lay the drain, he is now estopped from claiming damages for the act of the board in laying the drain, and if the board, with the consent or at the request of the petitioner, substituted another line or method differing from the one first proposed by the board without his claiming damages, he cannot claim damages for the act of the board in substituting such other line or method. You must settle just what transpired at that hearing, and by the agreement which the parties made there at that time they are bound, and you should so hold them. If the agreement was that there should be no damages paid in consequence of the construction of this drain, then you have no right to award any; and if you should find the agreement was that there should be no damages in case they constructed it in a certain way, and they afterwards substituted another way, and Driscoll agreed to the substitution, he is bound and is entitled to no damages; but if they changed the construction and he did not agree that the substitution should be made, he is not bound by the original agreement, and he would be entitled to damages for any injuries he sustained from the acts of the board of health on his premises."

On the question of damages the judge instructed the jury:

" A plain, practical question for you to deal with here is, what was the difference in value between that property just before the

construction of those works by the board of health, and its value in the market afterwards. First . . . find just what the condition of that land was before the drain was constructed. The respondent claims that a portion of the petitioner's land, sometimes spoken of as a corner, was before the construction of this drain wet, marshy, spongy land, unsuitable for cultivation, the soil constantly saturated with water flowing from the adjacent land, or coming down in some run from the premises above that was ultimately drained by this new drain. Supposing that you should find the condition of the petitioner's land to have been as was claimed by the respondent, you are then called upon to say what that land was worth before this drain was constructed. It is not what the petitioner deems it to be worth, not necessarily his judgment as to its value, although, as the owner of the land, he is entitled to express his judgment as to the value; but the question is what was that land worth in the market before the board acted, not necessarily what was it worth for farming or for house lots, but what was it worth in the market; taking the land as you find it, what was it worth before this drain was constructed. You should compare the value of that land before the drains were made with the value of the land after they were constructed and in operation, and when I say after the construction of the drains, it may be upon one phase of this evidence that it would be after the construction of the drain upon the petitioner's premises and also drains below that point, because if at the hearing of May 6th it was the understanding of the parties, and the agreement was made in view of that understanding, that there should be some drains opened below that point, and they were afterwards opened and operated, then you are to take into consideration the fact that they were opened and did operate, and the result or effect which it had upon the petitioner's land. The rule always to be applied in determining the question of damages where property has been taken by the public or an individual is the market value of the property which is taken. You are here called upon to determine what was the market value of the land before the change was made, and what was the market value afterward, and if you should find that it was diminished in value by the change, the diminution will be the difference between the market value before the drain was con-

structed and the market value after it was constructed and in operation, and you should determine that difference if there be any upon the evidence before you; but in determining it you should take into consideration all the evidence tending to show the changes wrought by the construction of the drain.

" Some evidence has been offered before you as to stenches and odors arising from that drain. The parties here are at odds; the claim on the part of the petitioner being that those stenches and odors arise from sewage matter brought down upon his premises through this drain; the respondent contending that there was no such matter brought on to his premises through this drain, but that the drain carried surface water only, and not sewage, and that the flow from the drain was pure water. Here is a question of fact, and on this evidence the burden of proof is upon the petitioner if he seeks to establish the proposition that there was foul water brought upon his land. If, on the other hand, you find yourselves unsatisfied with this contention of the petitioner and the evidence is not sufficient to warrant you in so finding, then the mere fact that there was water from another source allowed to stand upon his land and there become stagnant and result in foul odors would not warrant a recovery, because that would not result from the act of the board of health. Any nuisance on his own land in order to be chargeable to the city must be the result of the act of the board of health, so that, unless you find their construction resulted in a nuisance, the evidence he offers is entirely immaterial and unimportant."

The jury returned a verdict for the petitioner; and the respondent alleged exceptions.

*C. A. Reed,* for the respondent.

*E. H. Bennett & F. S. Hall,* for the petitioner.

LATHROP, J. 1. The first question in this case arises on the motion to dismiss the petition on the ground that the Superior Court had no jurisdiction of the matter. This question is also raised by a request for a ruling.

It was the duty of the board of health, if in its opinion any damages were sustained by the petitioner, to estimate such damages. Pub. Sts. c. 80, § 30. Its return, therefore, under § 33, to the city clerk, which mentioned no damages, must be taken as a determination on its part that no damages were sus-

tained. *Monagle* v. *County Commissioners*, 8 Cush. 360. See
also *North Reading* v. *County Commissioners*, 7 Gray, 109, 112;
*Hildreth* v. *Lowell*, 11 Gray, 345, 352; *Hamlin* v. *New Bedford*,
143 Mass. 192.

The present petition is, therefore, in the nature of an appeal
from an award of the board of health; and the question is
whether the petition can be brought in the Superior Court.
Section 35 of the Pub. Sts. c. 80, is as follows: "Any person
aggrieved by the decision of the board, health officer, or com-
missioners, in their estimate and award of damages, may make
complaint to the county commissioners for the county at any
time within one year after the return to the city or town clerk;
whereupon the same proceedings shall be had as in cases where
persons or parties are aggrieved by the award of damages by
selectmen for land taken for a town way."

This section is a re-enactment of the St. of 1868, c. 160, § 8,
and it is manifest that after the passage of the St. of 1873,
c. 261, § 1, and before the passage of the Public Statutes, a per-
son aggrieved had a right to a trial by a jury in the Superior
Court. And we are of opinion that the fact that § 8 of the St. of
1868 has been retained in the Public Statutes without change
does not prevent a resort to the provisions of the Pub. Sts. c. 49,
§ 105, in which the St. of 1873 is incorporated. See *Grimshaw*
v. *Fall River, ante*, 483.

2. The measure of damages was correctly stated to the jury.
It was the difference between the fair market value of the land
before the act of the board of health and such value afterwards.
*Moulton* v. *Newburyport Water Co.* 137 Mass. 163, 167. See
also *Providence & Worcester Railroad* v. *Worcester*, 155 Mass. 35.
The jury were carefully instructed that any nuisance on the
petitioner's own land, in order to be chargeable to the respond-
ent, must be the result of the act of the board of health, and
that unless the construction resulted in a nuisance, the evidence
of a subsequent nuisance was immaterial. The respondent con-
tends that a view which was taken by the jury furnished oppor-
tunity to them to infer neglect in maintaining the drain; but
we see no evidence in the bill of exceptions tending to show
neglect on the part of the board of health, or that any such
contention was made by the petitioner. There was a dispute

between the parties as to whether the drain brought sewage and foul odors upon the petitioner's land, but we find nothing in the exceptions to show that this was caused by any neglect on the part of the board in maintaining the drain, in distinction from its original construction. The instruction requested was, therefore, properly refused.

3. The remaining questions arise on the refusal of the court to give the third and fourth requests for instructions.

The ground upon which a person who is injured by the exercise of the right of eminent domain, or of a right akin to it, is precluded from recovering his damages on account of what he has said or done, is frequently spoken of in the reports as resting in waiver. *Fuller* v. *County Commissioners*, 15 Pick. 81. *Seymour* v. *Carter*, 2 Met. 520. *Hildreth* v. *Lowell*, 11 Gray, 345, 352. *Bell* v. *Boston*, 101 Mass. 506, 510. But in all the cases to which our attention has been drawn there has been either an agreement founded upon a valuable consideration, or the act relied upon as a waiver has been of such a kind as to estop a person from insisting upon the claim given him by law. Thus in *Seymour* v. *Carter*, *ubi supra*, which was a petition for a jury to assess damages caused by the flowing of the petitioner's land by the respondent's dam, there was evidence that the petitioner urged the building of the dam, and promised that, if it should overflow his land, he would not ask any damages. This evidence was held to be competent, on the ground stated by Chief Justice Shaw as follows: " For the promise thus made not to claim damage, there is a good and legal consideration. There is promise for promise, on which the builder of the mill relies, and incurs expense in the execution of his part of the agreement." So, in *Smith* v. *Goulding*, 6 Cush. 154, there was a parol agreement not to claim damages, in pursuance of which a dam was erected. See also *Crocket* v. *Boston*, 5 Cush. 182 ; *Mitchell* v. *Bridgewater*, 10 Cush. 411 ; *Brown* v. *Worcester*, 13 Gray, 31, 36 ; *Haskell* v. *New Bedford*, 108 Mass. 208, 213, 214 ; *Griffin* v. *Lawrence*, 135 Mass. 365.

The questions in the case were whether any agreement was made by the petitioner with the board of health, if one was made what it was, and whether the petitioner by his conduct or silence was estopped from claiming damages.

While there was evidence in support of the respondent's contention, this was contradicted by the petitioner. There was evidence given by witnesses called by both parties, that at the hearing before the board of health the statement of the petitioner that he should claim no damages was not an absolute one, but was qualified by the words "if the board of health put a stone drain under ground through his premises." There was also evidence that the petitioner did not remain passive while the drain was being dug, but objected on the ground that it was not being put under ground. The petitioner also denied making statements to persons in charge of the work, and acting for the board of health, which had been testified to, to the effect that he should make no claim for damages if an open drain were dug. It appeared that during the course of the work the course of the drain was changed, as the respondent contended, at the request of the petitioner; but this he denied.

On this state of the evidence, the respondent asked that the third and fourth requests for instructions be given. The only criticism which the respondent makes in his brief as to the refusal to give the third instruction is, that the element of estoppel was added in the charge, and that no reference was made by the judge to the effect of statements made by the petitioner to third persons. We are of opinion, for the reasons above stated, that the element of estoppel was properly added; and, as there was no evidence that any statements were made to any persons other than those acting for the board of health, the subject was sufficiently covered by referring to statements made to the board of health.

There is also this further objection to the third request. A statement that a person will claim no damages is not necessarily evidence that he has suffered no damages beyond the benefits accruing from the act, nor an admission that he had no claim for damages at the time of making the statement. It may be rather an assertion of a wrong sustained, coupled with a statement that he will not seek redress for the wrong.

The respondent in its brief makes no specific objection to the refusal of the court to give the fourth request for instructions. It is covered generally by what we have said as to the third request, and the instructions given cover more fully the questions in issue than the request does.　　　*Exceptions overruled.*