FROST COAL COMPANY *vs.* CITY OF BOSTON & another.

Suffolk. January 14, 1927. — May 18, 1927.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Eminent Domain*, Validity of taking, Description. *Constitutional Law*, Eminent domain. *Notice*. *Damages*, For property taken or injured under statutory authority.

At the hearing of a petition by a corporation for the registration of title to land which the Commonwealth, a respondent, contended had been included in a taking by the metropolitan park commission under St. 1915, c. 300, for a bridge, the petitioner contended that the taking was invalid because of lack of notice to it. It appeared that a description of the property taken by metes and bounds, courses and distances, had been duly recorded in the registry of deeds; that the president of the petitioner knew that the plan of the land taken included the tract in question, but had not been advised of the petitioner's rights or interests therein, and supposed that a further taking of the petitioner's land was to be made; that, before the taking by the metropolitan park commission, the petitioner's officers participated in numerous hearings and tentative plans in regard to the new bridge and the takings to be made therefor. *Held*, that, on the facts presented, actual notice by the board to the petitioner of the taking was not required.

At the hearing above described, it further appeared that no owners were named in the instrument of taking and there was no award of damages. The petitioner contended that the taking was invalid because of the failure to assess damages. *Held*, that

(1) Failure to assess damages did not affect the validity of the taking;

(2) The failure to assess damages gave to the petitioner a statutory right to have damages assessed by a jury without first applying to the board exercising the right of eminent domain; having such right, its

constitutional right to reasonable compensation for property so taken was fully protected.

The taking above described was in 1916 and was of certain land in connection with the construction of a new bridge, described in the instrument of taking by metes and bounds, courses and distances. At the end of the description appeared the following recital: "containing seventy seven hundred and twenty (7720) square feet, more or less, and being a part of said Neponset Avenue, in the said city of Boston." In 1858 the county commissioners, for the purpose of converting a turnpike into a highway and of widening the same, had taken land to the line which formed the northeasterly line of the taking by the park commissioners. The way was not worked to its full width and buildings and other structures were maintained thereon. The petitioner contended that by reason of the words, "being a part of said Neponset Avenue in the city of Boston," the taking by the metropolitan park commission went no farther than the line of the way worked by the county commissioners and thereafter used as a way, and sought registration of the strip between that line and the line of the taking in 1916, described by metes and bounds, courses and descriptions. The judge found that the title to this strip was in the petitioner at the time of the taking by the Commonwealth, notwithstanding the taking in 1858 to its northeasterly line, the true boundary of Neponset Avenue at this point having become established, through the maintenance of structures and the operation of R. L. c. 53, § 1, at the southwesterly line of the tract to which the controversy related; but he ruled that the taking of 1916 was valid and included the strip in question, and that title therefore was in the Commonwealth. *Held*, that

(1) The controlling matter in the description was not the reference to Neponset Avenue, but the metes and bounds by which the exact location taken was described, and the judge was right in deciding that the recital as to Neponset Avenue did not limit or confine the description of land taken to the boundaries of Neponset Avenue as they existed;

(2) Such description in the taking of 1916 included the strip in controversy and was sufficiently accurate to identify the land taken; by virtue of that taking, the title to the strip passed to the Commonwealth.

PETITION, filed in the Land Court on October 20, 1922, for the registration of the title to land on Neponset Avenue in Boston.

In the Land Court, the petition was heard by *Davis*, J. Material facts found and rulings made by the trial judge are stated in the opinion. The petitioner asked for the following rulings:

"8. Under the taking of September 27, 1916, the Commonwealth did not acquire title to the strip of land in question because the statutory requirements relative to damages being estimated and determined in respect to the petitioner's

land were not complied with, and therefore the taking was void as against the petitioner."

"11. The September 27, 1916, taking designated the city of Boston as the sole and exclusive owner of the land in question, and the taking observed only those legal requirements running in favor of municipalities when highway property of a municipality is taken by eminent domain for park and State boulevard purposes, by the Commonwealth."

"16. The southwesterly boundary of the locus in respect to the flats adjoining it southeasterly is the northeasterly boundary of the location of the Neponset Bridge as it was located previous to its demolition in 1917.

"17. The September 27, 1916 taking constitutes a cloud on the title of the petitioner.

"18. The petitioner is entitled on all the evidence to have the strip of land in question registered as comprising part of the premises of the petitioner."

The rulings were refused. The petitioner alleged exceptions.

*D. T. O'Connell*, for the petitioner.

*W. J. O'Malley*, Assistant Corporation Counsel, for the city of Boston.

*J. R. Benton*, Attorney General, *A. C. York*, Assistant Attorney General, *& J. H. Devlin*, for the Commonwealth, submitted a brief.

SANDERSON, J.    This is a petition filed in the Land Court for the registration of title to land located on the northeasterly side of Neponset Avenue in Boston.

In 1916, the metropolitan park commissioners, by virtue of St. 1915, c. 300, and of every other power thereto enabling, took certain land in connection with the construction of a new bridge, described in the instrument of taking by metes and bounds, courses and distances. At the end of the description appeared the following recital: "containing seventy seven hundred and twenty (7720) square feet, more or less, and being a part of said Neponset Avenue, in the said city of Boston." No owners were named in the instrument of taking and there was no award of damages. The judge found that the requirement for recording in the registry

of deeds a description sufficiently accurate for the identification of the land taken was complied with.   St. 1894, c. 288, § 6.   The only matter in controversy is the title to a strip of land near the northwesterly corner of Neponset Bridge, located between the northeasterly line defined by the metes and bounds, courses and distances in the taking of 1916, and the northeasterly line of Neponset Avenue, as it had become established at the time of that taking.   The judge of the Land Court ruled that the taking of 1916 was valid and included the strip in question, that title thereto is in the Commonwealth; and ordered that a decree for the petitioner be entered to the line of the 1916 taking.

The petitioner saved exceptions to the exclusion of evidence and to the refusal by the judge to give certain requests for rulings.   It contends that the taking in behalf of the Commonwealth in 1916 was invalid for three reasons: (1) Because of lack of notice to the petitioner; (2) because of failure to assess damages; and (3) because of inaccurate description in the taking.

1. The act of 1915 under which the taking was made provided for the assessment of damages in the manner set forth in St. 1894, c. 288.   There is no requirement in either of those acts that notice be given to the owners of land taken. On the facts here presented, actual notice to the land owner by the board exercising the power of eminent domain was not required.   *Appleton* v. *Newton,* 178 Mass. 276.   The owner could have learned of the taking through the recording of the description in the registry of deeds, and, upon the information thus obtained, could have asked to have his damages assessed by a jury.   In *Appleton* v. *Newton, supra,* at page 282, the court said: "the statute authorizing the taking is a public law of which every one is presumed to have knowledge . . . . This statute is one, which from its nature, affects people and property only in a very small territory.   The subject to which it relates is one of general public interest in the neighborhood affected by it, and it would hardly be possible that such legislation would be proposed and enacted without general knowledge among the people in that neighborhood that such a proposition was being considered."   It is further

stated, at page 284, that "the Legislature might assume that persons whose lands are taken would have such knowledge on the subject of the taking that the constructive notice by filing an instrument of taking in the registry of deeds would be all that is required to enable them to protect their rights within the . . . [time] allowed them for that purpose." "It would be impracticable to make the validity of the taking depend upon notifying all owners personally by name, and in proceedings *in rem* of this sort it is not necessary." *Brock* v. *Old Colony Railroad*, 146 Mass. 194, 195. *Chandler* v. *Jamaica Pond Aqueduct Corp.* 114 Mass. 575, 577. It is found as a fact that the president of the petitioner knew that the plan of the land taken included the tract in question, but had not been advised of the company's rights or interests therein, and supposed that a further taking of the company's land was to be made. It is also found that before the taking by the Commonwealth, the petitioner's officers participated in numerous hearings and tentative plans in regard to the new bridge and the takings to be made therefor.

2. It is assumed that the provision of St. 1894, c. 288, § 5, that "Said board shall estimate and determine as near as may be all damages sustained by any person or corporation by the taking of land, or any right therein," applies to this case, and that it was the duty of the park commissioners to make such estimate and determination if, in their judgment, damages had been sustained. *Monagle* v. *County Commissioners*, 8 Cush. 360, 362. *Hafey* v. *Commonwealth*, 189 Mass. 540, 541. A failure to assess damages does not affect the validity of a taking, but it gives the party aggrieved his statutory right to have damages assessed by a jury without first applying to the board exercising the right of eminent domain. *Monagle* v. *County Commissioners, supra. Driscoll* v. *Taunton*, 160 Mass. 486, 492. *Albro* v. *Fall River*, 175 Mass. 590. *Taintor* v. *Mayor & Aldermen of Cambridge*, 197 Mass. 412. In *Hafey* v. *Commonwealth, supra*, the court said: "It has often been held by this court that when a board, charged with the duty of assessing damages for land taken or injured, fails to make an assessment, such failure is equivalent to an adjudication that

there are no damages.  Upon such failure, the party ag-
grieved may apply for a trial by jury."  The petitioner's
right to have a jury assess the damages for land taken for a
public use fully protects its constitutional right to reasonable
compensation for property so taken.

3.  The petitioner's contention is, that the strip in question
is not included in the taking because of the recital at the end·
of the description: "being a part of said Neponset Avenue,
in the said city of Boston."  It appeared from the findings
that the petitioner's immediate predecessors in title had
notified the metropolitan park commission that they believed
themselves to be the owners of the strip in controversy and
that they also understood that it was claimed to be a part
of the highway.  In 1858, the county commissioners, for the
purpose of converting a turnpike into a highway and of
widening the same, took land to the line which forms the
northeasterly line of the strip in controversy and is the same
line to which the taking by the park commissioners, in 1916,
went; but this way was not worked to its full width and build-
ings and other structures were maintained thereon.  The
judge finds that the title to this strip was in the petitioner at
the time of the taking by the Commonwealth, and that,
notwithstanding the taking in 1858 to its easterly line, the
true boundary of Neponset Avenue at this point had become
established, through the maintenance of structures and the
operation of the statute (R. L. c. 53, § 1) at the westerly line
of the tract to which the controversy relates.  The taking
in 1916, as determined by metes and bounds, courses and
distances, was of Neponset Avenue as it had been laid out in
1858, and not of Neponset Avenue as it had become estab-
lished by the maintenance of structures within the limits
of that strip.  The controlling matter in this description
was not the reference to Neponset Avenue, but the metes and
bounds by which the exact location taken was described, and
the judge was right in deciding that the recital as to Neponset
Avenue did not limit or confine the description of land taken
to the boundaries of Neponset Avenue as they existed.  This
description in the taking of 1916 included the strip in con-
troversy, was sufficiently accurate to identify the land taken,

and, by virtue of that taking, the title thereto passed to the Commonwealth.

The record discloses no error in the refusal by the judge to give the eleventh request, which is based upon an assumption not justified by the findings, namely, that the taking designated the city of Boston as the sole and exclusive owner of the land taken. The petitioner concedes that its sixteenth request, relating to the boundary of flats, should have been given only in case the taking of the strip in dispute was invalid; that question having been decided contrary to the contention of the petitioner, its exception to the refusal of the judge to give this request need not be further considered.

The judge was justified in excluding the evidence to show the nature of the contemplated plans discussed by different public bodies before the taking was made, including those for taking the petitioner's property, which were considered but not adopted. The record does not disclose what the nature of these discussions was, nor how plans contemplated but not adopted could affect the petitioner's rights in view of the taking that was made.

All questions argued have been considered and no reversible error appears. The order for a decree to the line of the 1916 taking is affirmed.

*So ordered.*