WILLIAM J. DEVINE, trustee,[1] *vs.* TOWN OF NANTUCKET
& another.[2]

Nantucket. April 3, 2007. - July 19, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Eminent Domain,* Validity of taking. *Limitations, Statute of. Notice. Constitutional Law,* Eminent domain, Taking of property. *Bona Fide Purchaser. Real Property,* Bona fide purchaser.

The three-year statute of limitations contained in G. L. c. 79, § 16, did not bar an action to quiet title to property that the defendant town had taken by eminent domain, where the order of taking was not recorded in due course, in that the order was not indexed under the name of the owner of record, who was readily identifiable, and therefore, the limitations period for challenging the validity of the taking or filing a petition for damages began to run only when the plaintiff received actual notice of the town's claim. [506-510]

Statement that as a matter of fundamental fairness, a town cannot take property by eminent domain, declare the owner to be unknown, and only then investigate whether there is anyone to whom damages can be paid. [510-512]

A Superior Court judge correctly concluded that the plaintiff in an action to quiet title was a bona fide purchaser of the property at issue without notice of an earlier taking by the defendant town, where the plaintiff could not have obtained actual notice of the order of taking by means of a search conducted in the conventional method, and where the town's own actions contributed to rendering the taking unascertainable to reasonable title examination. [512-513]

CIVIL ACTION commenced in the Superior Court Department on August 28, 2001.

The case was heard by *Daniel A. Ford,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert D. Hillman* for town of Nantucket.

*Philip H. Graeter* (*J. Owen Todd* with him) for the plaintiff.

*Henry H. Thayer,* for Real Estate Bar Association for Massachusetts, Inc., & another, amici curiae, submitted a brief.

[1] Of the Loomis Realty Trust.

[2] Building commissioner for the town of Nantucket.

*Michael E. Malamut, Martin J. Newhouse, & Jo Ann Shotwell Kaplan*, for New England Legal Foundation, amicus curiae, submitted a brief.

MARSHALL, C.J. In 1968, the town of Nantucket (town) took certain property (locus) by eminent domain for purposes related to Nantucket Memorial Airport (airport). At that time the locus was listed as "owners unknown" on the town's tax rolls, even though there was in fact an identifiable record owner. In 1985, an attorney acting on behalf of William J. Devine, trustee of the Loomis Realty Trust (trust), purchased the record owner's title and subsequently conveyed it to the trust. Neither the record owner, the attorney, nor Devine had actual notice of the 1968 taking. Nor could the order of taking have been found in the chain of title to the locus by searching the grantor index. Further, after the 1985 purchase, the town restored the locus to the tax rolls, assessed and collected taxes on it, commenced tax takings, allowed a tax abatement, and issued building permits to Devine for construction on the locus. The question presented is whether in these circumstances Devine, as trustee, has good title to the locus.

Devine commenced this action in the Superior Court, seeking an order to quiet title to the locus, as well as other relief. After a jury-waived trial, a judge in the Superior Court made careful and comprehensive findings of fact and rulings of law, pursuant to which a judgment entered declaring that Devine, as trustee, "is owner in fee simple of the Locus" and that "[p]ursuant to G. L. c. 240, § 6, title to the Locus is hereby quieted and established to be in" him. The town appealed, and we transferred the case here on our own motion.[3] We affirm.[4]

1. *Facts.* We begin with the judge's findings, which we accept unless they are clearly erroneous. Mass. R. Civ. P. 52 (a), as amended, 423 Mass. 1402 (1996). See, e.g., *Kendall* v. *Selvaggio*, 413 Mass. 619, 620 (1992), and cases cited. The locus consists of

---

[3]The Superior Court judge also dismissed Devine's claims against the Nantucket building commissioner because no evidence concerning any such claims had been presented at trial. Devine cross-appealed, but that ruling has not been challenged on appeal.

[4]We acknowledge the amicus briefs of the New England Legal Foundation; the Real Estate Bar Association for Massachusetts, Inc.; and the Abstract Club.

a parcel of land, of approximately 25,000 square feet, identified as Lots 17-26 of block 285 as shown on a plan entitled "Plan of the Nobadeer Section of Surf-side, Nantucket, Mass., made by Codd & Allen Surveyors," dated May, 1890. The locus is also identified as parcel no. 62 on sheet 88 in the records of the town's assessor of taxes. The locus was once part of a large parcel of land owned by the Nantucket Surfside Company. In 1889, the trustees of that company executed a foreclosure deed to Francis Doane, who in turn conveyed the large parcel to Seth Doane. Seth Doane then conveyed the large parcel to Daniel McKeever, who subdivided the large parcel and recorded the Codd & Allen plan. McKeever conveyed the locus to George L. Loomis by a deed dated May 9, 1890, recorded in the Nantucket registry of deeds.

In 1923, or shortly before, Loomis died and left a will in which he devised the locus to his sisters, Mary Loomis and Caroline Loomis. The will was probated in Somerset County, New Jersey, where Loomis apparently was living at the time of his death. No ancillary probate proceedings were ever commenced in Nantucket County. Mary Loomis and Caroline Loomis conveyed the locus to Lewis Popham Carmer by a deed dated November 22, 1923, and recorded in the Nantucket registry of deeds. The deed from the Loomis sisters to Carmer was listed in the grantor index under the names "Mary Loomis" and "Caroline Loomis." That was the only deed from anyone named "Loomis" listed in the grantor index from 1980 back to 1923. No other conveyances from persons named "Loomis" appeared in the grantor index.

For unknown reasons, the locus was removed from the town's tax rolls sometime after 1923. According to the former town counsel, the town's tax records are not historically accurate. Some parcels of property simply dropped off the tax rolls in the 1920's and 1930's, particularly in the Surfside area of the town. When that happened, the property was listed in the tax records as "owners unknown."

The locus is in close proximity to the airport, at the southern end of a runway. Members of the Nantucket Airport Commission (commission) have for some time considered it advantageous to acquire property near the airport in order to prevent construction in that area. On September 10, 1968, the commission voted to

take the locus by eminent domain. An order of taking reflecting that vote was recorded in the registry of deeds on October 3, 1968. The order of taking indicates that the commission acquired an "avigation easement" over two parcels (parcels 1 and 2) and a fee simple interest in two other parcels (parcels 3 and 4). Parcel 3 is described as "[l]and shown as Block 285 on Plan of Surfside lots recorded in Nantucket Registry of Deeds. Present owners unknown," and includes the locus. The order of taking also indicates that the sum of $1,000 was awarded for the taking of parcel 3.

On June 24, 1970, the commission recorded an amended order of taking. The reason for that amendment was "to clarify the [a]vigation [e]asement and describe the rights taken therein." That amendment did not affect the locus, which was again described as "Land shown as Block No. 285 on Plan of Surfside Lots recorded in the Nantucket County Registry of Deeds."

On December 8, 1970, the commission recorded another amended order of taking. The reason stated for this amendment was that "possibly some requirements of the pertinent statutes of the Commonwealth were not complied with." In that amended order of taking, parcel 3 was described as, "Land shown as Block 265 on Plan of Surfside [l]ots recorded in Nantucket County Registry of Deeds" (emphasis added). However, the December, 1970, amendment specifically referenced both the original 1968 order of taking and the June, 1970, amendment. The judge found that the reference to "Block 265," rather than "Block 285," in the December, 1970, amendment was a scrivener's error and that anyone who examined the original order of taking and the two amendments would see that the December, 1970, amendment contained an error. Those findings have not been challenged on appeal.

The December, 1970, amendment also provided that the sum of $200, rather than $1,000, was awarded for the taking of parcel 3. That discrepancy is not explained on this record, but it is immaterial to our decision. Because the takings were considered to be from "owners unknown," there was no reference to the takings in any of the grantor indices of persons in the chain of title

to the locus, up to and including Carmer, the individual who had acquired the locus from the Loomis sisters in 1923.[5]

Prior to trial, representatives of the town searched the commission's files for records pertaining to the taking and were not able to find any. Nor were they able to locate minutes of the commission's meetings in 1968 or 1970. Therefore, there was no evidence as to what the commission actually did to effect the taking, other than the current (at the time of trial) commission chairman's testimony that he thought the town would have done "whatever is necessary for the taking." The judge inferred that, at the time of the taking, the town did little to ascertain the true owner of the locus. It may have done little more than check the tax records, which listed the owner of the locus as unknown. The judge also found that, for reasons that will be discussed later in greater detail, a reasonably prudent title examiner in 1968 would have found the 1923 deed conveying the locus to Carmer, and that, if the town had examined the grantor index for deeds from the subdivider (McKeever), it would have discovered that the record owner in 1968 was Carmer.

Devine is an experienced genealogist and has particular skills in finding both flaws in land titles and persons who may be heirs with standing to assert rights in connection with such flaws. He conducts business under the name Genealogical Search, Inc. As he testified, his business is to "try to clear up titles when [he] find[s] out they are either tax title properties or they could be owners unknown property." Devine's normal practice in the 1980's was to locate an heir who would have standing to assert a claim with respect to a title defect, and then propose to that heir that a joint venture or partnership be established in order to assert the heir's rights, with Devine agreeing to pay all legal fees and costs associated with the potential litigation. If the claim was successfully concluded, Devine and the heir would divide the profit equally.[6]

In 1985, Paul Vozella, an attorney who performed title

---

[5]The 1968 order of taking and the June, 1970, amendment both listed the commission as the grantor of the locus, an obvious error. The December, 1970, amendment erroneously listed as grantor an individual who had discharged a mortgage on a parcel unrelated to the locus.

[6]The judge took judicial notice that Devine's business practices are well documented in the courts of this Commonwealth. See, e.g., *Christian* v. *Mooney,*

services for Devine, brought the locus to Devine's attention, possibly because it was still listed as "owners unknown" in the town's tax records. Devine commissioned him to perform a title search, and thereafter Vozella informed Devine that Carmer was the record owner of the locus. Devine contacted Carmer by telephone and proposed a joint venture to him. Carmer responded that he was not interested in a joint venture, but that he would sell the locus to Devine for $7,500. Devine agreed and instructed Vozella to purchase the locus from Carmer on Devine's behalf. By deed dated August 16, 1985, and recorded in the Nantucket registry of deeds, the locus was conveyed to Vozella. Carmer died approximately one month later. Other than the reference to that deed, Carmer's name does not appear in the grantor indices of the Nantucket registry of deeds between 1923 and 1985. The judge concluded that a reasonably diligent title examiner searching for the record title holder of the locus in 1985 would have ascertained that Carmer held good, clear, and marketable title to the locus. Based on the state of the title to the locus in 1985, a purchaser would have been able to obtain title insurance for the locus.

On October 13, 1988, Devine executed a declaration of trust entitled the "Loomis Realty Trust" and recorded it in the registry of deeds. Vozella then conveyed the locus to Devine as trustee by deed dated September 12, 1988, and recorded in the Nantucket registry of deeds. Devine had not visited the locus before it was conveyed to Vozella. After it was conveyed to the trust, he visited it on two occasions, once in 1990, and again in approximately 2000.

After the locus was conveyed to Vozella, the town restored it to the tax rolls. The town assessed property taxes to Vozella or the trust beginning in 1986. However, neither Vozella nor the trust paid the real estate taxes when they were due, resulting in the initiation of two tax takings by the town in 1991 and 1999.

400 Mass. 753 (1987); *Robertson* v. *Plymouth*, 18 Mass. App. Ct. 592 (1984); *Krueger* v. *Devine*, 18 Mass. App. Ct. 397 (1984); *Allen* v. *Batchelder*, 17 Mass. App. Ct. 453 (1984). Those practices have no bearing on Devine's rights with respect to the locus, as Devine purchased Carmer's interest outright rather than entering into a partnership with him, and did not commence litigation for some sixteen years thereafter, when the town informed him of the 1968 taking.

The trust then redeemed the tax takings by paying $45,097.60.[7] After the redemptions, the town continued to assess property taxes to the trust, which the trust paid through the first quarter of 2001. The trust also applied for and received an abatement of property taxes for fiscal year 2000. The trust has paid a net total of $46,549.10 in property taxes on the locus after acquiring it.

On February 5, 1999, an attorney who was representing the trust wrote a letter to the board of health of Nantucket. Attached to that letter was a copy of a portion of a Nantucket assessor's map showing the locus labeled "TON." The judge inferred that "TON" stood for "Town of Nantucket." A copy of the same map, with an arrow containing the word "Subject" pointing to the locus, was apparently transmitted by facsimile to Devine in 1995. The locus was marked "TON" in that map as well.[8]

In October, 1998, the trust applied to the town for a permit to construct a septic system on the locus. That permit was issued in due course. On January 3, 2000, the trust applied to the town's building inspector for a building permit to construct a house on the locus. That permit was issued on June 2, 2000. Sometime in 2001, the trust commenced excavation on the locus, preliminary to construction of the house. At that time, the locus was outside the airport fence. The vast majority of the locus lies beyond the building restriction line that designates the buffer zone the town desires to keep on each side of the airport runways. The proposed location of the house was outside that buffer zone.

On June 12, 2001, town counsel sent a letter to the trust's lawyer, asserting that the locus was the subject of a 1968 taking by the town. Thereafter, the town filled in the excavation on the locus and revoked the trust's building permit. It also issued a stop work order and changed the location of the fence around the airport property so that it now includes the locus. The trust has been physically barred from the locus since June 12, 2001.

---

[7] The trust's failure to pay the property taxes when due is consistent with Devine's business practice, which is to pay the property taxes when he resolves the heir's claim and sells the title interest that he has acquired.

[8] The judge rejected the town's contention that Devine acquired actual knowledge of the taking by receiving the map in 1995. Among other reasons, the judge credited Devine's testimony that he understood the "TON" notation to refer to a tax taking initiated in 1991. The town has not challenged these findings on appeal.

2. *Discussion.* The town argues, first, that Devine's claim of title is barred by the three-year statute of limitations contained in G. L. c. 79, § 16. That limitation provision states:

> "A petition for the assessment of damages under section fourteen may be filed within three years after the right to such damages has vested; but any person, including every mortgagee of record, whose property has been taken or injured, and who has not received notice under section eight or otherwise of the proceedings whereby he is entitled to damages at least sixty days before the expiration of such three years, may file such petition within six months after the taking possession of his property or the receipt by him of actual notice of the taking, whichever first occurs, or, if his property has not been taken, within six months after he first suffers actual injury in his property."

Similarly, under G. L. c. 79, § 18, an action challenging the validity of a taking must be brought within three years from the time that the right to damages vests. *Cumberland Farms, Inc.* v. *Montague Economic Dev. & Indus. Corp.*, 38 Mass. App. Ct. 615, 616 (1995). Under G. L. c. 79, § 3, the right to bring an action for damages vests "[u]pon the recording of an order of taking . . . unless otherwise provided by law." The time limitations imposed by G. L. c. 79 are inflexible and apply even to the claim that a taking was a nullity. *Whitehouse* v. *Sherborn*, 11 Mass. App. Ct. 668, 674-675 (1981). The town argues that because the order of taking was recorded on October 3, 1968, the time to bring any action for damages or to challenge the validity of the taking expired on October 3, 1971. In the circumstances of this case, we disagree.

"The taking of land from a private owner against his will for a public use under eminent domain is an exercise of one of the highest powers of government." *Lajoie* v. *Lowell*, 214 Mass. 8, 9 (1913) (taking void where railroad obtained determination of limits by county commissioners after taking rather than before as required by statute). Accordingly, we interpret the eminent domain statutes strictly in order to protect citizens from encroachment on their property rights. *Id.* In that respect, we pay particular regard to the recording of taking orders, for we have long held that the

recording of the order of taking, which the taking authority is obligated to do under G. L. c. 79, § 3, and which starts the statute of limitations clock running, "is the vital act upon which depends the transfer of title from the landowner to the municipality. It is the operative alienation of the land. . . . It is the act which fixes the rights of the parties." *Radway* v. *Selectmen of Dennis*, 266 Mass. 329, 334 (1929), citing *Turner* v. *Gardner*, 216 Mass. 65, 69 (1913), and cases cited.

In the context of eminent domain, as in other contexts concerning real property, the recording of instruments serves vital purposes:

> " 'First and foremost, [recording acts] are designed to protect purchasers who acquire interests in real property for a valuable consideration and without notice of prior interests from the enforcement of those claims.' . . . 'The second purpose of recording acts is fundamental to the achievement of the first. To make the system self-operative and to notify purchasers of existing claims, the recording acts create a public record from which prospective purchasers of interests in real property may ascertain the existence of prior claims that might affect their interests.' "

*Selectmen of Hanson* v. *Lindsay*, 444 Mass. 502, 507 (2005), quoting 14 R. Powell, Real Property § 82.01[3], at 82-13, 82-14 (M. Wolf ed. 2000).

General Laws c. 184, § 25, provides: "No instrument shall be deemed recorded in due course unless so recorded . . . as to be indexed in the grantor index under the name of the owner of record of the real estate affected at the time of the recording." The town argues that the recording provision of G. L. c. 184, § 25, is limited to instruments of "indefinite reference" and does not apply to taking orders under G. L. c. 79, § 3. We, however, agree with the judge in the Superior Court that the recording provisions of § 25 do apply to an order of taking. The "recorded in due course" provision of G. L. c. 184, § 25, by its plain terms, is not limited to instruments containing indefinite references. The Legislature could easily have written the statute to provide that "[n]o instrument *containing an indefinite reference* shall be deemed recorded in due course" (emphasis added); but it did not

do so. We will not add to the statute language that the Legislature did not include. See *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 803 (1999). Moreover, construing the "recorded in due course" provision to apply to all recorded instruments is consistent with the strong public policy, evident throughout the real property statutes, of providing a "self-operative" system for readily ascertaining title to land. See *Selectmen of Hanson* v. *Lindsay, supra.*

Here, it is indisputable that the 1968 order of taking was not indexed "under the name of the owners of record of the real estate affected at the time of the recording." G. L. c. 184, § 25. The owner of record at the time of the taking was Carmer. The judge found, on ample evidence, that Carmer could readily have been identified as the owner of the locus had the town taken reasonable steps to determine the record owner. There was no error in the judge's conclusion that, in the circumstances of this case, the order of taking was not recorded "in due course" and was thus invalid.

Our analysis is not swayed by the town's reliance on G. L. c. 36, § 27, which permits a registrar of deeds to enter the name of a grantor as " 'unknown,' under the letter U" if the grantor's name does not appear in the instrument to be recorded. Nothing in the provision can be read to absolve the town of its responsibility to exercise reasonable diligence in attempting to identify the record owner of the locus before declaring the owner to be unknown. Nor is there any suggestion that the registrar of deeds for Nantucket County did anything improper by recording the 1968 order of taking as "owner unknown," given that the town presented the order to the registry in that condition. The sole evidence of the steps taken by the town in 1968 was the current commission chair's testimony that he thought the town would have done "whatever is necessary for the taking." The judge was warranted in finding that this general statement, apparently made without the benefit of personal knowledge, was outweighed by the evidence that the instruments duly recorded in the registry of deeds would have revealed the deed from McKeever (the subdivider) to Loomis, as well as the further deed from the Loomis sisters to Carmer. He was warranted in finding, based on uncontradicted testimony from an expert the judge found to be

"highly qualified," that a reasonably prudent title examiner in 1968 would have discovered the deed to Carmer. We need not decide whether an "owners unknown" order of taking is sufficient to trigger the statute of limitations where the town or other taking authority made reasonable efforts to identify the owner, because here, the town's perfunctory efforts, if any, to identify the owner of the locus were inadequate under any standard.

This court's decision in *Hardy* v. *Jaeckle*, 371 Mass. 573 (1976), on which the town relies, is unavailing. In that case, in assessing taxes, the board of assessors of Nantucket was required to exercise reasonable diligence to try to determine the identity of the owner from the records in the registry of deeds and registry of probate before assessing property to "persons unknown" or to a fictitious person, but was not required to look beyond those records. *Id.* at 580. Here, in contrast, there is no evidence that the town in fact examined its own registry of deeds or registry of probate before recording the order of taking as "owners unknown." More importantly, the judge's findings show that a reasonable examination would have revealed the existence of a deed to Carmer. The deed conveying the locus from McKeever, the subdivider, to Loomis was duly recorded, as was the deed from the Loomis sisters to Carmer. Although there was no deed or ancillary probate proceeding in Nantucket recording Loomis's devise of the locus to his sisters, see G. L. c. 192, § 9, we reject the town's suggestion that this presented an insurmountable gap. The judge found that there was but one deed in the grantor index from anyone named "Loomis," and that "it would have been very easy and prudent for a title examiner to check that conveyance to see if it referred to the [l]ocus." While the town argues that it was a mere fortuity that Loomis left the locus to family members who still had the same last name, we take the facts as presented in the record. The Nantucket registry of deeds contained one deed, easily located, from anyone named "Loomis." As Devine's expert credibly testified, "a conveyance by persons with the same surname as George Loomis . . . would have to be examined." He further testified that his standard practice would be to inquire as to any grantor with the same surname as the grantor he was searching, if practical, and that it was practical in this case. The judge's determination that the town reasonably

could have found the deed to Carmer without the need to go beyond its own records is fully supported.[9] This court's decision in *Hardy* v. *Jaeckle, supra,* cannot be stretched to absolve the town from venturing beyond tax rolls that it knew to be particularly unreliable in the area of Nantucket that held the locus.

In view of the language of G. L. c. 184, § 25, the strictness with which we interpret the eminent domain statutes, and the important purposes served by the recording acts, we agree with the judge that the order of taking was not recorded in due course. As a result, the three-year limitations period for challenging the validity of a taking or filing a petition for damages did not start running as of the date of the "owner unknown" order of taking in 1968. Devine received actual notice of the town's claim to have taken the locus by letter dated June 12, 2001. He filed this action on August 28, 2001, less than three months later. By any standard, Devine commenced this action in a timely manner.

3. *Constitutional claims.* The town's actions, as the judge properly surmised, implicate constitutional concerns. Notice to the property owner is constitutionally required before property is taken by eminent domain. *Opinion of the Justices,* 365 Mass. 681, 693 (1974), citing *Appleton* v. *Newton,* 178 Mass. 276, 282 (1901). See *Schroeder* v. *City of N.Y.,* 371 U.S. 208, 211-212 (1962); *Walker* v. *Hutchinson,* 352 U.S. 112, 115 (1956). Such notice need not in all cases be actual notice, so long as constructive notice is given. *Frost Coal Co.* v. *Boston,* 259 Mass. 354, 357 (1927). But see *Schroeder* v. *City of N.Y., supra* at 212-

---

[9]The judge also suggested that a title examiner, noting that the deed to George L. Loomis recited that he was a resident of Somerset County, New Jersey, could have checked probate records in that county and discovered the will devising the locus to the Loomis sisters. The deed to Carmer recited that the locus had been left to the Loomis sisters in Loomis's will. In *Hardy* v. *Jaeckle,* 371 Mass. 573, 578 (1976), this court did not require the town to go beyond its own records, due at least in part to statutory language, inapplicable here, that property taxes are to be assessed to "the person appearing of record, in the records of the county . . . where the estate lies, as owner." *Id.,* quoting G. L. c. 59, § 11, as appearing in St. 1939, c. 175. We need not decide whether the town would have been required, in the context of an eminent domain taking, to examine the New Jersey records. It is enough to resolve this case that a reasonable examination of Nantucket records would have revealed the existence of the deed to Carmer.

213, citing *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 318 (1950) ("notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question"). Ordinarily, constructive notice can be effected by recording the order of taking in the registry of deeds. *Frost Coal Co.* v. *Boston, supra.* This presupposes, however, that the order of taking is recorded in such a way that it can be found "by means of a search conducted in the conventional method." *Dalessio* v. *Baggia*, 57 Mass. App. Ct. 468, 473-474 (2003), quoting 4 American Law of Property § 17.17 (Casner ed. 1952). In *Mullane* v. *Central Hanover Bank & Trust Co., supra* at 315, the United States Supreme Court had stated, "when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." It is undisputed that, in 1968, no actual notice of the taking was provided to Carmer. The town argues that the recording of the "owners unknown" order of taking was sufficient to provide constructive notice. We disagree. As we have discussed, the town's failure to make a reasonably diligent effort to identify the record owner made its alleged expungement of Carmer's rights invisible to anyone conducting a reasonable title search.

The invisibility, as the judge found, was not limited to the registry of deeds. At the time of the taking, G. L. c. 79, § 7D, as amended through St. 1967, c. 476, required a town or other taking authority to pay damages to the Superior Court[10] to be invested on behalf of the person or persons entitled to them if, after reasonable investigation, the owner could not be determined. There is no evidence that the town paid any damages to the Superior Court. We need not decide in this case whether the failure to pay such damages, without more, invalidates a purported "owners unknown" taking. We agree with Devine, however, that § 7D, at the time of the taking and now, has presumed that a reasonable investigation would be conducted *before* a town determined that the owner of taken property was

---

[10]General Laws c. 79, § 7D, as amended through St. 1975, c. 791, now requires a taking authority to pay the damages to the treasurer. See St. 1970, c. 795, § 1.

unknown. As a matter of fundamental fairness, a town cannot take property, declare the owner to be unknown, and only then investigate whether there is anyone to whom damages can be paid.

4. *Bona fide purchaser.* The town also challenges the judge's ruling that Devine was a bona fide purchaser of the locus without notice of the taking.[11] The burden of proving that a person was *not* a bona fide purchaser lies with the party making that claim. *Selectmen of Hanson* v. *Lindsay*, 444 Mass. 502, 509-510 (2005), citing *Richardson* v. *Lee Realty Corp.*, 364 Mass. 632, 634 (1974). As our foregoing discussion makes clear, the town's argument that Devine was on notice by virtue of the 1968 order of taking must be rejected, as he could not have "obtain[ed] actual notice . . . by means of a search conducted in the conventional method." *Dalessio* v. *Baggia, supra* at 473-474, quoting 4 American Law of Property, *supra* (defendant bona fide purchaser without constructive notice where standard title examination practices would not have revealed out-of-chain conveyance). The town's reliance on cases involving Federal takings is misplaced, as the Federal takings statutes prescribe a wholly different process, namely an in rem condemnation proceeding commenced in the Federal District Court.[12,13] See *United States* v. *125.2 Acres of Land*, 732 F.2d 239, 242-243 (1st Cir. 1984) (under 40 U.S.C.

---

[11]The town contests the judge's ruling that Devine's status as a bona fide purchaser without notice was sufficient to give him standing to challenge the taking. The town does not appear to dispute the general principle that a bona fide purchaser may have such standing; it merely suggests that Devine in fact had notice. Neither the judge nor the parties discuss cases such as *Barnes* v. *Springfield*, 268 Mass. 497, 505-506 (1929), or *Howland* v. *Greenfield*, 231 Mass. 147, 148 (1918), where it was held that subsequent purchasers lacked standing, at least where the owner at the time of the taking had actual or constructive notice. In the circumstances of this case, where Carmer lacked any notice of the taking, Devine's claim to be a bona fide purchaser without notice is sufficient to give him standing to bring this action to quiet title, even though doing so necessitates a challenge to the taking itself.

[12]The town contends that a reasonably diligent title search would not disclose a Federal condemnation proceeding, for which notice is not required under Federal law. The argument is irrelevant to the town's actions at issue here. In any event, it appears that, although recording is not required under Federal statutes, the United States Attorney for Massachusetts has made it a practice to record Federal takings. See A.L. Eno & W.V. Hovey, Real Estate Law § 18.7, at 540 n.1 (4th ed. 2004).

[13]We need not consider the town's suggestion, made for the first time in its

§ 258a, title vests in United States prior to need to notify owners of right to compensation; inadequate notice does not render Federal taking void).

Finally, we will not ignore the town's own actions in rendering the taking unascertainable to reasonable title examination. The town purported to take the locus for purposes relating to the airport, but did not use it for any purpose until years later. There is no evidence that the town paid for the locus, or set money aside in the event that the owner would be found. The town did not take physical possession of the locus for over thirty years after the purported taking, and then only when Devine commenced building on the locus. In many respects, the town's behavior is inapposite to its claim to be the owner of the locus: it assessed taxes on the locus; it effected tax takings, which it allowed to be redeemed; it granted a tax abatement; and it issued the necessary permits for building on the locus. The town, apparently relying on nothing but its own inaccurate tax records, drew up an "owners unknown" order of taking, recorded it outside the existing chain of title, and then acted for the next thirty years as if no taking had occurred, until revoking Devine's permits, filling in his excavations, entering the locus, and fencing it in. There is considerable force in the policy favoring the finality of takings. But that policy is outweighed in this case by the necessity of giving adequate notice before effecting an eminent domain taking, and by the importance of maintaining a reliable land recording system. In the unusual circumstances of this case, the judge properly quieted title in Devine.

*Judgment affirmed.*

---

reply brief and unsupported by authority, that an eminent domain taking is not a cloud on title that can be dispelled by a bona fide purchaser without notice. See, e.g., *Travenol Lab., Inc.* v. *Zotal, Ltd.*, 394 Mass. 95, 97 (1985).