JULIA E. DRISCOLL & others *vs.* COUNTY COMMISSIONERS OF ESSEX.

Essex.    May 20, 21, 1929. — June 27, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Adverse Possession. Way*, Public. *Salem Turnpike. Evidence*, Presumptions and burden of proof, Of adverse possession.

A finding, by a judge of the Land Court hearing in 1928 a petition for the registration of land, that the petitioner and his predecessor in title had occupied for more than forty years up to a certain fence a strip of land which county commissioners contended was a part of a public way, and that he had acquired title by adverse possession prior to 1917, is not erroneous as a matter of law merely because the earliest date to which any of the witnesses testified was fifty years before the time of hearing, there having been evidence as to the physical condition of the premises, and the conditions described by the witnesses as being in existence at the time to which their testimony related having been such that they might justify an inference that they had existed at least as early as 1877.

PETITION, filed in the Land Court on October 21, 1926, for the registration of a parcel of land on Cooper Street near Western Avenue in Lynn.

In the Land Court, the petition was heard by *Corbett*, J. Material facts and rulings by the judge in his decision are stated in the opinion. Requests by the respondents county commissioners, which were refused by the judge, were as follows:

"1. On all the evidence the petitioners have failed to establish the southeasterly boundary of the locus as claimed.

"2. On all the evidence and record the evidence shows the southeasterly boundary of the locus to be the northwesterly line of the layout made by the county commission-

ers in 1875 as shown on the plan filed with said layout and a plan of Alonzo Lewis, December, 1892.

"3. On all the evidence and record, if the southeasterly boundary of the locus is established as claimed, then it is subject to the easement thereover of the layout made by said county commissioners."

The respondents alleged exceptions.

*L. B. Colbert,* for the respondents.

*P. A. Kieley,* for the petitioners.

SANDERSON, J.  This is a petition to register title to a parcel of land in Lynn.  The respondents contend that the southeasterly part of the locus is a portion of a public way.

A law enacted in 1802 incorporating the Salem and Chelsea Bridge Turnpike provides that: "open uninclosed ground shall be at least four rods wide on the upland, and eight rods wide at least (including the canals) on the marsh . . . throughout the whole length of said road over said marsh . . . and the made-way or path for travelling shall be of sufficient width, and not less than twenty four feet wide, in any part thereof, and over the marsh not less than thirty feet wide within the railings . . . ."  St. 1868, cc. 309 and 335, provide for a laying out of a public way over the way and bridges of the Salem Turnpike and Chelsea Bridge Corporation.  In 1869 William M. Newhall conveyed to Cheever and Charles Newhall a parcel of land in Lynn bounded: "Southeasterly by land of the Salem Turnpike, about twenty-three (23) rods; Southwesterly by land now or late of David Pingree Heirs, six (6) rods; Northwesterly by land now or late of Thomas B. Newhall, about twenty-three (23) rods, and Northeasterly by a street (now known as Cooper Street) from River Street to Salem Turnpike, about five (5) rods."  In 1871 Cheever and Charles Newhall conveyed a parcel with the same description to George P. Parks, but with this addition: "Containing about one hundred thirty (130) rods be the same more or less; meaning to convey the same lot of land conveyed to us by William M. Newhall."

The county commissioners by a decree entered on August 31, 1875, determined the true location of the layout of the

Salem Turnpike by virtue of the act of 1802 and determined a location for a highway over that turnpike to be known as a public highway forever. A plan made in 1892 was introduced in evidence showing the land conveyed to Parks and indicating that the locus includes a part of the way laid out by the county commissioners. St. 1917, c. 344, Part II, § 74, now G. L. c. 86, § 3, provides: "If the boundaries of a public way are known or can be made certain by records or monuments, no length of possession, or occupancy of land within the limits thereof, by the owner or occupant of adjoining land shall give him any title thereto, unless it has been acquired prior to May twenty-sixth, nineteen hundred and seventeen, and any fences, buildings or other obstructions encroaching upon such way shall, upon written notice from the county commissioners or board or officer having authority over ways in towns, be forthwith removed by the owner or occupant of adjoining land, and if not so removed said commissioners, board or officer may cause the same to be removed upon said adjoining land." A copy of a layout made by the Massachusetts highway commission in 1917 over a part of the way laid out by the county commissioners was in evidence, on which it appears that a portion of the northwesterly line is the same as the southeasterly line of the locus as claimed by the petitioners. The bill of exceptions states, in substance, that there was no evidence of an abandonment under G. L. c. 81, § 5, of that portion of the way laid out in 1875 from Cooper Street to Saugus River. It appeared in evidence from a plan dated 1923, filed with the department of public works, division of waterways and public lands of the Commonwealth, that on a petition of one Moss to fill certain creeks including "The Canal" shown on the Harris plan, so called, the physical condition of the southeasterly part of the locus was shown as included in the layout of the county way in 1875. Under this petition a permit to fill was granted.

An employee of the city of Lynn in the engineers' department testified that he drove a row of stakes in 1898 or 1899 for a location of a fence along the travelled way in front of the locus now claimed by the petitioners in line with the fence

on Western Avenue.  Witnesses testified that they saw a fence which extended along the northwesterly line of Western Avenue, by and in front of the locus, to the bridge at the river for as long a period of time as they could remember varying from thirty-four to more than fifty years before the date of hearing.  The decision of the judge of the Land Court was filed December 3, 1928.  The judge found that the fence had continued substantially in the same place for more than forty years before May 26, 1917.  He also found that during this period the petitioners and their predecessors in title made use of the land inside the line of the fence; that one of them had·a barn on the premises, pastured cows, cut hay, and otherwise used the land as owner; that the disputed area was not used by the public as a way or by any persons other than the Parks family for any purpose; that their possession was exclusive, and that they held adversely, with no one objecting.  A license was granted by the mayor and alder-men of Lynn and the department of public works to Parks to fill certain tidewater creeks including the creek which ex-tended into a part of the locus now in dispute and within the limits of the old turnpike road.  The judge refused the respondents' requests for rulings, and found that the lines of the highway can be made certain; "that the petitioners and their predecessors in title occupied the strip of land in dispute for more than forty years up to the fence, and that such occu-pancy was adverse"; "that they have acquired title thereto by adverse possession prior to May 26th, 1917"; and that "the petitioners are entitled to registration of the land as claimed by them, except that the southeasterly boundary thereof is the line laid down by the Massachusetts State Highway Commission on August 14, 1917."

To establish the petitioners' title, they must prove that their possession began at least as early as May 26, 1877. The contention of the respondents that an adverse possession at this date ·could not have been found because the earliest date to which any of the witnesses testified was fifty years before the time of hearing cannot be maintained.  The find-ing was not necessarily based on this evidence alone, and the conditions described by the witnesses as being in existence at

the time to which their testimony related may have been such as to justify an inference that they had existed at least as early as May 26, 1877. The maintenance of a building on the disputed premises and the other uses made of the property would justify an inference of an adverse possession. See *Frost Coal Co.* v. *Boston,* 259 Mass. 354, 359; R. L. c. 53, § 1. In the case at bar it did not appear that any part of the disputed area had been used for highway purposes, and in other respects the case is distinguishable in its facts from *Vye* v. *Medford,* 266 Mass. 208. In the latter case the judge found as a fact that adverse possession was not established. The finding in the case at bar that the petitioners' title was established cannot, as matter of law, be said to be wrong, and that finding is controlling. In the refusal to give the respondents' requests no error of law appears.

*Order for registration of title affirmed.*