METROPHANE ZAYKA, JR., & another[1] *vs*. HELEN
GIAMBRO.

No. 90-P-1326.

Suffolk. February 19, 1992. - June 26, 1992.

Present: BROWN, KASS, & IRELAND, JJ.

*Real Property*, Deed, Ownership. *Estoppel. Deed*, Quitclaim.

Where a grantor conveyed a parcel of land in 1942 to his wife, who died in
   1962 still seized of the parcel, and the grantor, apparently not recalling
   his earlier conveyance, purported to convey the same parcel in 1968 to
   one of his sons by quitclaim deed with statutory covenants, and where,
   later in 1968, the several children of the grantor conveyed to the gran-
   tor their fractional interests in the parcel inherited from their mother,
   the doctrine of estoppel by deed operated, in the circumstances, to give
   effect to the grantor's 1968 conveyance to his son. [751-753]

CIVIL ACTION commenced in the Land Court Department
on January 13, 1988.

The case was heard by *Marilyn M. Sullivan*, J.

*Michael D. Greenberg* for the defendant.

*Floyd H. Anderson* for the plaintiffs.

KASS, J. Metrophane Zayka, Jr. (Junior), and his wife,
Gail H. Zayka, the plaintiffs,[2] brought this action against
Junior's sister, Helen Giambro, seeking confirmation of their
title to a 85,784 square foot parcel of land on Old Harvard
Road, Bolton (the locus). The dispute arose between the sib-
lings as a consequence of several compounded conveyancing
errors made by their father, Metrophane Zayka, Sr. (Sen-
ior), with some help, it should be noted, from counsel. After

[1] Gail H. Zayka.

[2] Gail H. Zayka became a coowner of the disputed lot in 1972, when
Junior transferred the land to himself and his wife as tenants by the
entirety.

trial, a judge of the Land Court held that Junior was entitled to a judgment in his favor. We affirm.

These are the facts found by the Land Court judge. Senior acquired title by deed to a large tract of land located at 2 Old Harvard Road in Bolton from Gilbert Wheeler in 1937. See the appendix to this opinion. That transaction involved two parcels, one of which, Parcel A, contained 27.1 acres and encompassed within its boundaries the locus. By deed dated July 11, 1942, and duly recorded, Senior conveyed Parcel A to his wife, Theodora Zayka (Theodora). Theodora died intestate on October 19, 1962, seized of the title to Parcel A. By the laws of intestacy, Senior obtained an undivided one-third interest in Parcel A and his eleven children each received one-eleventh of the residual two-thirds. Thus, each child came to have a 2/33 undivided interest in Parcel A.

Senior apparently forgot that he had transferred Parcel A to Theodora, because on May 29, 1968, he purported to convey the locus[3] to Junior by deed. That deed was duly recorded. In conveying the locus, Senior negotiated the lot line with Junior to ensure that the remaining portion of Parcel A contained enough frontage on Old Harvard Road to serve as a house lot under Bolton zoning laws. Senior subsequently conveyed an adjoining lot to William and Ardelle Hodson.

At the time of its purported conveyance to Junior, the locus contained a roughhewn structure which, while equipped for electricity, was without water or sewer connections. Once used by the family as a summer camp, the Zayka brothers had come to use the structure as a home base while working in the area. Junior took conveyance of the locus with an eye to building a home for himself and his future wife. Within a few years after receiving the property from his father, Junior did just that. By investing his own time, energy, and money, Junior created a comfortable home for his family, equipped with a kitchen, living room, playroom, laundry room, and two baths. He also installed a new sewer system, built a new

---

[3]It will be recalled that the locus was an 85,784 square foot portion of Parcel A.

well, paved the driveway, built a carport, and landscaped the property.

During the administration of Theodora's estate, there came to light her ownership of the title to Parcel A at death and the consequent devolution of the fractional interests upon her children. The children returned the title to their father (Senior) by two deeds executed in 1968. In the first deed, dated July 20, 1968, the adult children, including Junior, conveyed their interest in the property to Senior. In the second deed, Junior, acting as guardian of his minor siblings, conveyed the minor children's interest in the property to Senior. In 1972, Ardelle Hodson, the surviving grantee of the other lot carved out of Parcel A, discovered the defect in Senior's title to Parcel A and received a confirmatory deed from Senior.

The final conveyance of concern occurred in 1976. At that time, Junior and his wife were adopting a child. Junior asked his father to convey the remainder of Parcel A to him so that the land would be available should the child, as an adult, wish to build a home next to his parents. Senior consented to Junior's request, granting by deed of July 30, 1976, a plot known as Lot F on a plan that had been recorded on July 2, 1976. Lot F was what had been Parcel A, less the locus and the Hodson lot. Significantly, the metes and bounds description in that deed and the plan accompanying it refer to the locus as belonging to Junior.

Senior died intestate in 1983. Under the laws of intestacy, ownership of Senior's property, including the locus which had been conveyed to him by his children in 1968, passed to his children. Therefore, each child received a one-eleventh interest in the property. Junior and his wife became aware of the flaw in their title to the locus in 1987, when a loan to be secured by a mortgage on the locus was denied because of the defect in title.[4] They then requested confirmatory deeds

---

[4]Three prior loan applications using the locus as collateral had been approved. It was only when the Zaykas went to another bank that the defect was discovered.

from each of Junior's siblings. Of all the siblings, only Giambro refused to convey her interest.

After Giambro's refusal, the plaintiffs brought an action in the Land Court to reform the deed running from Senior to Junior and his wife, dated July 30, 1976, to confirm their title in the locus. The Land Court judge concluded that the plaintiffs were entitled to recover under three theories of law: (1) estoppel by deed (of the 1968 deed); (2) adverse possession; and (3) mutual mistake requiring reformation of the 1976 deed. We think that the plaintiffs are entitled to judgment on the basis of estoppel by deed and, therefore, do not reach the validity of the alternate theories on which the Land Court judge pitched her decision.

Estoppel by deed occurs when, as in this case, a grantor conveys property by deed which, unknown to the grantee,[5] the grantor does not own at the time of the conveyance, but which the grantor later acquires. In such a case, the grantor (and anyone claiming under him) is estopped from asserting against the grantee a claim of title to the property conveyed. *Comstock* v. *Smith*, 13 Pick. 116, 119 (1832). *Knight* v. *Thayer*, 125 Mass. 25, 27 (1878). 3 American Law of Property § 15.19 (Casner ed. 1952). 6A Powell, Real Property §§ 901[2], 927 (1992). 1 Patton, Titles § 215 (2d ed. 1957). Johanson, Estoppel By Deed and the Recording System: The "Ayer Rule" Reexamined, 43 B.U.L.Rev. 441 (1963).

It appeals to reason and a sense of what is equitable that, when a person manifests an intention to transfer title to property, an after-acquired ownership of that property will make good the imperfection of the original conveyance. The instant case is an apt illustration. Senior unmistakably intended to convey the locus to Junior but, as the judge found, appeared to have forgotten that twenty-six years earlier he had tucked title to Parcel A away with his wife for safe keeping. He had, in fact, only a one-third undivided interest to convey. Two months later, he acquired the remaining two-

---

[5]Occasionally, the lack of title — as in this case — is also unknown to the grantor.

thirds from his children. It is a particular aberration of this case that in the corrective conveyance by the children to their father, Junior, in a formal sense, gave back what his father had just given him, but the Land Court judge could, as she did, see that transaction for what it was, an effort to return to the father those interests which had passed to the children by intestacy. Compare *Sorenson* v. *Wright*, 268 N.W.2d 203, 205 (Iowa 1978), illustrating circumstances in which estoppel by deed does not apply because the enabling title originates with the grantee. Doubts about what Senior meant to do and thought he had done are resolved by his deed to Junior and Gail, dated July 30, 1976, of the balance of the parcel of which the locus had been a part. That deed contains a description by compass bearings and, when it comes to the locus, describes four compass courses as by land of the grantees; i.e., far from asserting any claim to the locus, Senior assumes the validity of his earlier conveyance of the locus to Junior.

Generally, however, application of the doctrine of estoppel by deed is limited to warranty deeds. See *Comstock* v. *Smith*, 13 Pick. at 119; *Wight* v. *Shaw*, 5 Cush. 56, 63-65. (1849); *Doane* v. *Willcutt*, 5 Gray 328, 333-334 (1855); *Mt. Washington Coop. Bank* v. *Benard*, 289 Mass. 498, 500 (1935); Mendler, Massachusetts Conveyancers' Handbook § 5:4 (3d ed. 1984); Park, Real Estate Law § 215 (2d ed. 1981); 1 Patton, Titles § 216. The warranty covenant in a warranty deed, constituting, as it does, a declaration by the grantor that the grantor has a good title to convey, makes the argument for repairs on the basis of after-acquired title appealing. Possibly because of some nervousness about the Herculean labor which would be involved in running back grantors in a registry of deeds search to see if they had made a conveyance before acquiring title of record, see Mendler, Massachusetts Conveyancers' Handbook § 5:4, the authorities reflect unease about extending estoppel to other than warranty deeds.[6]

---

[6] A statutory mortgage deed incorporates a covenant of good title. G. L. c. 183, § 19.

Yet the warranty deed has become a rara avis, and the norm in contemporary conveyancing is the short form quitclaim deed. Johanson, Estoppel by Deed and the Recording System, 43 B.U.L.Rev. at 454. If estoppel by deed is a sound principle, no compelling logic or binding precedent proscribes its application to a quitclaim deed. Indeed, estoppel by deed was applied to the equivalent of a quitclaim conveyance in *Trull* v. *Eastman*, 3 Met. 121, 124 (1841), a case involving a family arrangement in which it was understood that the title conveyed was later to be acquired by the grantor from his father's will. As suggested in a Land Court case decided at the turn of the century, invocation of the doctrine of estoppel by deed turns not on the formal nature of the covenants but on what is the obvious intention of the parties. See *Whitman, petitioner*, (1899) reported in Davis, Land Court Decisions 8, 10 (1909), in which the deed made effective through application of estoppel by deed was a quitclaim deed.

Application of estoppel by deed to a quitclaim deed is particularly compelling where, as here, the claim against the title is made by someone who bases her claim on direct descent by blood from the grantor. Quitclaim covenants, after all, do warrant that the grantor shall not impair the title and shall defend the title against those claiming under the grantor. See G. L. c. 183, § 17. The case might stand differently had there been an intervening bona fide purchaser who had no notice of the purported conveyance of the locus by Senior to Junior.

The judgment, that Metrophane Zayka, Jr., and Gail[7] H. Zayka, husband and wife, as tenants by the entirety, hold title to the locus, free from the claims of Helen Giambro, is affirmed.

*So ordered.*

---

[7]Although the judgment spells Mrs. Zayka's first name "Gayle," the complaint and the deed to the Zaykas spell her name "Gail."