KATHLEEN M. DALESSIO *vs.* MAUREEN B. BAGGIA & another.[1]

No. 00-P-1716.

Suffolk. October 22, 2002. - February 26, 2003.

Present: PORADA, DREBEN, & COHEN, JJ.

*Estoppel. Deed,* Quitclaim. *Real Property,* Deed.

Where the purported owner of a parcel of land, after having conveyed the parcel to third parties, conveyed a portion of that same parcel (locus) by quitclaim deed to the predecessor in title to the plaintiff, and later, after having reacquired the parcel from those third parties, granted mortgages to the parcel to the defendant, the doctrine of estoppel by deed could not be applied to invalidate the mortgages held by the defendant, a bona fide purchaser without actual or constructive notice of the prior conveyance of the locus. [469-474]

CIVIL ACTION commenced in the Land Court Department on December 2, 1998.

The case was heard by *Mark V. Green,* J., on motions for summary judgment.

*Lawrence P. Heffernan* for the plaintiff.

*Michael K. Murray* for Marsha H. Leavitt.

COHEN, J. The plaintiff filed a complaint for declaratory judgment in the Land Court, seeking a determination that by application of the doctrine of estoppel by deed she holds title to a parcel of land free of seven mortgages held by defendant Marsha H. Leavitt, as trustee of Honey Realty Trust (Honey Trust). On the parties' cross-motions for summary judgment, the Land Court judge ruled that the mortgage liens were valid and granted summary judgment to Honey Trust. We affirm, agreeing with the judge that the doctrine of estoppel by deed should not be

---

[1]Marsha H. Leavitt, trustee of Honey Realty Trust. We spell Leavitt's first name as it appears on the complaint and the docket even though an affidavit she filed below indicates that she spells her name "Marcia."

applied to a quitclaim deed to defeat the interests of a bona fide mortgagee for value who followed good conveyancing standards.

1. *Background.* The pertinent undisputed facts may be summarized as follows. By a quitclaim deed dated November 21, 1980, and recorded in the Plymouth County registry of deeds, Edward J. Baggia, as trustee of Baggia Development Realty Trust (Baggia Trust), conveyed a 285,130 square foot parcel, described on a plan as "Lot H," to himself, personally, and his wife, Maureen B. Baggia, as tenants by the entirety. About six months later, on June 4, 1981, Edward J. Baggia, as trustee of Baggia Trust, purported to convey to Patricia Lavoie a 47,637 square foot portion of Lot H, notwithstanding the fact that title to Lot H was now held by himself and his wife. The conveyance of this parcel, which is the locus at issue in this case, again was made by quitclaim deed and recorded in the Plymouth registry. In 1988, the plaintiff purchased the locus from Lavoie's successor in title.

In the interim, on December 2, 1985, the Baggias conveyed Lot H in its entirety back to Edward J. Baggia, as trustee of Baggia Trust. Over the next four years, Baggia, as trustee, granted seven mortgages, each containing mortgage covenants, to Honey Trust as security for loans totaling $450,000. All of the Honey Trust mortgages, including four that were granted before the plaintiff purchased the locus, covered Lot H in its entirety and were timely recorded. Each time Honey Trust advanced the funds that were secured by the Honey Trust mortgages, it did so after requesting that its attorney examine title to the mortgaged property.[2]

2. *Discussion.* The outcome of this case turns on the applicability of the doctrine of estoppel by deed to the facts at hand. "Estoppel by deed occurs when . . . a grantor conveys property by deed which, unknown to the grantee, the grantor

---

[2]According to the plaintiff's complaint, Baggia's wife, Maureen, eventually became the owner of the property through mesne conveyances from Baggia as trustee. The plaintiff named Maureen as a defendant and asserted that as between Maureen and herself, it was the plaintiff who held title to the locus in question. Maureen did not answer the complaint and was defaulted. Accordingly, the Land Court judge declared that the plaintiff's title is free of any adverse claim by Maureen B. Baggia or others claiming under her. No one has challenged this aspect of the judgment on appeal.

does not own at the time of the conveyance, but which the grantor later acquires. In such a case, the grantor (and anyone claiming under him) is estopped from asserting against the grantee a claim of title to the property conveyed." *Zayka* v. *Giambro*, 32 Mass. App. Ct. 748, 751 (1992) (footnote omitted).

The *Zayka* case illustrates the doctrine in operation. Zayka Senior conveyed a parcel of land to his wife, and then, years later, conveyed a portion of the same parcel to his son, Zayka Junior. Junior accepted the deed and built his residence on the property. When Senior's wife died intestate, her ownership of the parcel came to light. To rectify the consequent devolution of fractional interests upon Zayka's eleven children, all of them, including Junior, conveyed their interests in the property back to Senior. When Senior died intestate some years later, proportionate interests in the entire parcel, including the lot where Junior had built his house, once again passed by intestate succession to the children, one of whom, Junior's sister, refused to convey back to Junior her interest in his lot. *Id.* at 749-751.

Applying the principle of estoppel by deed, this court decided that, as against his sister's competing claim, Junior held title to that portion of the parcel conveyed to him by his father years earlier, because Senior's after-acquired title inured to Junior. *Id.* at 751-753. This was true even though the estoppel deed in *Zayka* was a quitclaim deed. As *Zayka* observed, the application of the doctrine of estoppel by deed historically had been limited to cases in which the mistaken conveyance was made by warranty deed,[3] but there was no compelling logic or binding precedent to proscribe the application of the doctrine to a quitclaim deed in the persuasive circumstances presented.[4] See *id.* at 752-753. Because the sister's claim against title was based

---

[3]That limitation had been a source of some comfort to conveyancers troubled by the uncertainties that the doctrine of estoppel by deed interjects into the recording system. See Eno & Hovey, Real Estate Law § 31.22 (3d ed. 1995), in which the authors comment that estoppel by deed was "[o]ne of the most disturbing rules of law in years past"; that it was not so "devastating" when applied only to warranty deeds, because, "at least in the Eastern counties, warranty deeds have almost disappeared"; but that "unfortunately" *Zayka* applied the doctrine to a quitclaim deed.

[4]The covenants under a statutory short form warranty deed obligate the grantor, along with the grantor's heirs and assigns, to defend title on behalf of the grantee and the grantee's heirs and assigns against all lawful claims, even

upon direct descent by blood from the grantor, it would have been particularly inequitable to allow her to frustrate Senior's intent; however, as *Zayka* noted in a cautionary dictum, "[t]he case might stand differently had there been an intervening bona fide purchaser who had no notice of the purported conveyance of the locus by Senior to Junior." *Id.* at 753. The present case raises the issue mused upon in *Zayka*.

The plaintiff contends that even if Honey Trust is a bona fide purchaser without actual or constructive notice,[5] the doctrine of estoppel by deed should be applied to invalidate its mortgages. She minimizes the significance of the dictum in *Zayka*, relying, instead, upon *Zayka's* application of the doctrine of estoppel by deed to a quitclaim deed and the existence of authority in the warranty deed context for applying the doctrine to bind subsequent purchasers who have no actual or constructive notice of the estoppel deed. In this respect, Massachusetts is one of a minority of states that are said to follow the "Ayer rule," which takes its name from *Ayer* v. *Philadelphia & Boston Face Brick Co.*, 159 Mass. 84 (1893), an opinion by Justice Holmes in which he rejected an attempt to exempt bona fide purchasers without notice from the application of the doctrine of estoppel by deed, explaining that "if it is a bad rule, that is no reason for making a bad exception to it." *Id.* at 88.

Despite its pedigree, the Ayer rule has long attracted strong criticism. See, e.g., Johanson, Estoppel by Deed and the Recording System: The "Ayer Rule" Reexamined, 43 B.U. L. Rev. 441 (1963); Stein, Mechanics of Title Examination in Massachusetts, 2 Crocker's Notes on Common Forms Appendix § A7 (8th ed. Supp. 2000). The gist of this criticism is that it is

those of third parties with conflicting claims of paramount title based upon an independent source or a different chain of title. Thus, with warranty covenants, the grantor essentially guarantees full and paramount title. Quitclaim covenants embrace only those claims arising directly through or under the grantor but no others. Quitclaim covenants do not guarantee full and paramount title, but do guarantee that the grantor is conveying whatever title he has and that he has done nothing to impair or encumber that title. See generally Eno & Hovey, *supra* at §§ 4.5-4.11.

[5]The plaintiff does not contend that Honey Trust had actual notice of the deed from Baggia Trust to Lavoie. She argues that Honey Trust should be considered to have had constructive notice. As we discuss below, we do not accept this position.

unjust to give priority to the interests of someone who negligently failed to examine records that would have shown that the grantor did not have title, over the interests of a subsequent purchaser in good faith who, after reasonable investigation, relied upon the title as it appeared of record.

Whether or not the Ayer rule is an entrenched part of Massachusetts real estate law when an estoppel deed is a warranty deed, we are unwilling to apply it in the circumstances presented here. As we intimated in *Zayka*, estoppel by deed will not always be applied to defeat the claims of subsequent grantees in situations involving quitclaim deeds if to do so would conflict with the underlying equitable purpose of the doctrine.

The equities in this case sort out very differently from those in *Zayka*. Honey Trust, unlike the sister in *Zayka*, was a bona fide purchaser, who loaned Baggia Trust substantial sums of money in exchange for the mortgages in question. Honey Trust was not a participant in reestablishing the grantor's title, as was the sister in *Zayka*. Nor was Honey Trust on notice of the deed from Baggia Trust to Lavoie or of any facts suggesting a competing claim. The sister in *Zayka*, on the other hand, knew, at a minimum, that her brother was residing in a home that he had built on the subject property with his father's consent.

Furthermore, as established by an uncontradicted, expert affidavit submitted by Honey Trust, although standard title examination practices would have disclosed to the plaintiff and her predecessors the defect in their chain of title, standard examination would not have revealed to Honey Trust the "out-of-chain" conveyance to Lavoie. This is because Honey Trust traced its chain of title to a deed (the deed dated November 21, 1980, from Baggia as trustee of the Baggia Trust to himself personally and his wife) executed and recorded before the purported estoppel deed. Thus, to have discovered the subsequent deed to Lavoie, Honey Trust would have had to perform a detailed, forward-looking examination of the grantor index that went beyond established practice. See *Morse* v. *Curtis*, 140 Mass. 112, 114-115 (1885) ("if a purchaser, upon examining the registry, find a conveyance from the owner of the land to his grantor, which gives him a perfect record title . . . . , he is entitled to rely upon such record title, and is not obliged to search the records afterwards").

The plaintiff nevertheless argues that Honey Trust should be viewed as having constructive notice of the deed into Lavoie because good title examination practice calls for looking at subsequent records involving the same grantor for purposes of checking for municipal liens. The plaintiff relies upon Title Standard 18 of the Massachusetts Conveyancers Association, which recommends running the owner in the grantor index for the four-year period following the recording of a conveyance to check for liens for unpaid real estate taxes.[6]

We think, however, that the discrete inquiry that Title Standard 18 contemplates is not at all comparable to the burdensome investigation that would have been necessary to uncover the problem here. It is one thing for an examiner to scan the grantee column of the index for municipal liens, but quite another to do a follow-up investigation of all of the other entries to determine whether the grantor may have reconveyed some or all of a previously conveyed parcel. Indeed, the nine pages of the grantor index submitted by the plaintiff as an exhibit to her motion for relief from judgment illustrate the problem. It appears that there were more than 200 conveyances of property between 1981 and 1987 by Baggia Trust or Edward Baggia individually or as trustee. To have checked each one in the manner suggested by the plaintiff would have been a daunting task. "It has been well stated that the only persons who should be affected by constructive notice are those who can obtain actual notice, or even full knowledge, by means of a search

---

[6]This standard was not included in the summary judgment record, but it was later called to the judge's attention as an exhibit to the plaintiff's motion for relief from judgment, along with a printout of pertinent sections of the applicable grantor index. The judge denied the motion for relief from judgment and declined to expand the summary judgment record to include the plaintiff's new submissions, noting that the plaintiff had conceded earlier that it would be impractical to require examiners searching title under a fiduciary deed to look for subsequent deeds of the same property by the trustees as individuals, and that "[t]he contention at the heart of [the motion for relief from judgment] was fully engaged" at the summary judgment stage and called for no further consideration by the court. Although the plaintiff initially appealed from the denial of the motion for relief from judgment, she no longer presses it. Be that as it may, we exercise our discretion to consider the documents appended to the motion, even though they were not made part of the summary judgment record, as they were called to the attention of the court below and bear on the plaintiff's appellate argument.

conducted in the conventional method . . . ." 4 American Law of Property § 17.17, at 593 (Casner ed. 1952). We therefore decline to impute constructive notice to Honey Trust.

3. *Disposition.* In summary, we conclude, as did the Land Court judge, that Honey Trust was a bona fide purchaser without actual or constructive notice of the conveyance to Lavoie, and that the equities do not favor the application of the doctrine of estoppel by deed to the detriment of Honey Trust in this case. The plaintiff therefore holds title to the locus (see note 2, *supra*), subject to the Honey Trust mortgages.

*Judgment affirmed.*