NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-1057                                      Appeals Court


LISA A. MACKEY  vs.  SANTANDER BANK, N.A.


No. 19-P-1057.

Middlesex.      June 9, 2020. - September 16, 2020.

Present:  Sullivan, Blake, & Ditkoff, JJ.


Trust, Revocable trust, Trustee's authority.  Uniform Trust
     Code.  Estoppel.  Mortgage, Real estate, Validity.  Real
     Property, Mortgage.  Uniform Trust Code.



     Civil action commenced in the Superior Court Department on
January 9, 2015.

     The case was heard by Kathe M. Tuttman, J., on motions for
summary judgment.


     Michael C. Najjar for the plaintiff.
     Matthew A. Kane for the defendant.


     SULLIVAN, J.  The plaintiff, Lisa A. Mackey, appeals from a

judgment entered in Superior Court following cross motions for

summary judgment.  A judge of the Superior Court declared that a

mortgage granted to the defendant, Santander Bank, N.A.

(Santander),[1] on the marital home of Lisa and her now ex-husband, James F. Mackey, Jr., was valid by virtue of the doctrine of estoppel by deed.[2] We conclude that the doctrine is unavailable in this case because James was not a trustee of the trust holding title to the real estate at the time the mortgage was granted or any time thereafter. Because there was not a sufficient basis in the summary judgment record for us to affirm on the alternative theory that, under G. L. c. 184, § 34, the mortgage was valid when given, we vacate the judgment and remand for further proceedings.

Background. This case was decided on cross motions for summary judgment. Accordingly, we summarize the facts in the light most favorable to the party against whom summary judgment was entered, here, Lisa. See DiLiddo v. Oxford St. Realty, Inc., 450 Mass. 66, 70 (2007); Khalsa v. Sovereign Bank, N.A., 88 Mass. App. Ct. 824, 830 (2016).

On October 26, 1998, while James and Lisa were still married, James established the JLJM Realty Trust (trust), designated himself as trustee, and had the marital home

---

[1] The mortgage was granted to Santander's predecessor, Sovereign Bank. Hereinafter, we refer to the lender as Santander.

[2] Because Lisa Mackey and James Mackey share a last name, we refer to them by their first names to avoid confusion.

transferred to the trust from his construction company.[3] Lisa and James were beneficiaries of the trust. On October 9, 2000, without Lisa's knowledge, James signed a document stating that he was resigning as trustee. The terms of the trust, set out in the margin, did not require notice of resignation to Lisa, the cobeneficiary.[4] James and his sister then signed documents purporting to appoint James's sister as successor trustee. Both Lisa and Santander agree that the appointment of the sister was contrary to the terms of the trust. All of these documents were recorded at the registry of deeds two months later, on December 11, 2000.

On April 12, 2008, more than seven years after James resigned as trustee, he executed a mortgage on the marital home "as trustee" to secure a $400,000 line of credit.[5] Lisa was unaware of the line of credit and the mortgage at that time. Subsequently, on December 14, 2011, James's sister resigned as

---

[3] Neither party has asserted that the trust was a nominee trust, nor do we address the question.

[4] Article 13 of the trust provided, "A Trustee may resign by written instrument, signed and acknowledged by the Trustee, and recorded in the appropriate Registry of Deeds."

[5] James also signed a trustee's certificate, which represented to Santander that he was the trustee. In addition, Santander had Fiserv Lending Solutions conduct a title search of the marital home, and Fiserv Lending Solutions advised Santander that James was the trustee.

trustee; she and James signed documents purporting to reappoint James as trustee.

In 2012, James filed a complaint for divorce against Lisa. He also went into default on the $400,000 line of credit. During the divorce proceedings, Lisa became aware of the line of credit and the mortgage, as well as the effort to change the trusteeship. On September 30, 2014, a judgment of divorce nisi entered that required Lisa and James to sell the marital home and share equally in the proceeds. By that time, foreclosure of the marital home was imminent.

Lisa then brought this action against Santander seeking a declaration that the mortgage was invalid.[6] Santander counterclaimed for unjust enrichment on the basis that Lisa benefited from at least some portion of the $400,000 line of credit.[7] On the parties' cross motions for summary judgment, the motion judge declared that the mortgage was valid by reason of estoppel by deed, and dismissed Santander's counterclaim for unjust enrichment as moot.

Discussion. 1. Validity of mortgage -- estoppel by deed. "Estoppel by deed occurs when . . . a grantor conveys property

---

[6] Sale of the marital home was stayed pending the outcome of this case.

[7] Lisa and Santander also brought claims against James. Those claims were resolved by rulings on motions to dismiss and for summary judgment, and are not at issue in this appeal.

by deed which, unknown to the grantee, the grantor does not own at the time of the conveyance, but which the grantor later acquires.  In such a case, the grantor (and anyone claiming under him) is estopped from asserting against the grantee a claim of title to the property conveyed" (citation omitted).[8] Dalessio v. Baggia, 57 Mass. App. Ct. 468, 469-470 (2003).  The motion judge concluded that James was entitled to reappoint himself as trustee under the terms of the trust, and that Santander was therefore entitled to rely on the doctrine of estoppel by deed to establish the validity of the mortgage.

The applicability of estoppel by deed turns on whether James became the trustee again after executing the mortgage "as trustee."  Both parties agree that the purported appointment of James's sister as successor trustee did not comply with the terms of the trust, but they disagree as to who instead became the successor trustee.  According to Lisa, she became the successor trustee upon James's resignation.  According to Santander, the trusteeship was vacant after James's resignation,

---

[8] Lisa does not dispute that these principles extend beyond the conveyance by deed context to the mortgage context presented here.  Nor does she dispute that estoppel by deed applies in the context of a trust, where someone who is not a trustee executes a document "as trustee" and later becomes a trustee. Accordingly, we deem both issues as uncontested for purposes of this litigation, and do not address them.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

and he was free to resume that position at any time under the terms of the trust, as he did in 2011.

We first address what happened immediately after James's resignation.  General Laws c. 203E, the Massachusetts Uniform Trust Code (MUTC),[9] provides that a vacancy in a trusteeship shall occur if, among other reasons, a trustee resigns.  G. L. c. 203E, § 704 (a) (3).[10]  When such a vacancy occurs, the MUTC provides that it shall be filled in the following order of

---

[9] We note that the MUTC, G. L. c. 203E, was not effective until July 8, 2012, after the trust was established and James both resigned and was purportedly reappointed as trustee. Nonetheless, the MUTC, with limited exceptions, applies to "all trusts created before, on or after the effective date" and "to all judicial proceedings concerning trusts commenced on or after the effective date."  However, the MUTC does not affect "an action taken before the effective date."  St. 2012, c. 140, § 66 (a).

[10] General Laws c. 203E, § 704 (a), provides in full:

"A vacancy in a trusteeship shall occur if:

"(1) a person designated as trustee rejects the trusteeship;

"(2) a person designated as trustee cannot be identified or does not exist;

"(3) a trustee resigns;

"(4) a trustee is disqualified or removed;

"(5) a trustee dies; or

"(6) a guardian or conservator is appointed for an individual serving as trustee."

priority:  "(1) by a person designated by the terms of the trust to act as successor trustee; (2) by a person appointed by unanimous agreement of the qualified beneficiaries; or (3) by a person appointed by the court."  G. L. c. 203E, § 704 (c).  As to subdivision (1) of § 704 (c), compare Ferri v. Powell-Ferri, 476 Mass. 651, 654 (2017) ("[W]here the language of a trust is clear, we look only to that plain language").

Thus, under either the MUTC or the common law, we first look to the relevant language of the trust.  Article 9 of the trust designated James as trustee and Lisa as successor trustee:

> "JAMES P. MACKEY JR. shall serve as Trustee during the entire duration of this trust or so long as he shall be able to discharge the duties thereof, and so long as said JAMES P. MACKEY JR. shall serve as Trustee, he shall act solely in all matters pertaining to the Trust.  If JAMES P. MACKEY JR. shall be unable or unwilling to serve as Trustee, then LISA A. MACKEY shall serve as Successor Trustee hereunder."

Thus, barring disqualification, according to the unambiguous trust language, Lisa was to serve as the successor trustee upon James's resignation.[11]

---

[11] Article 13 of the trust set forth the manner in which a trustee could resign and the procedure for the appointment of a new trustee in the event of the death, resignation, or incapacity of both James and Lisa:

> "A Trustee may resign by written instrument, signed and acknowledged by the Trustee, and recorded in the appropriate Registry of Deeds.  Should any vacancy occur by reason of the death, resignation or incapacity of the original and succeeding Trustee named herein, a new Trustee may be appointed by an instrument or instruments signed and

Our inquiry does not end there, however, because Santander contends that the mere naming of a person as trustee does not make it so; the person must accept the trusteeship. See Loughery v. Bright, 267 Mass. 584, 588 (1929), and cases cited. This rule, which has since been codified at G. L. c. 203E, § 701 (b),[12] is based in sound public policy. Trustees must fulfill certain duties and are liable for their failure to do so. See, e.g., O'Connor v. Redstone, 452 Mass. 537, 552-553 (2008) (successor trustees are liable for their failure to review records of predecessor trustees). However, in this case, Lisa, while the designated successor trustee, was not informed of the vacancy, and was deprived of the opportunity to accept the trusteeship.[13] We need not decide, however, what the

_____

acknowledged by all of the beneficiaries, provided in each case that such instrument or instruments shall be recorded in the appropriate Registry or Registries of Deeds along with a certificate of acceptance signed by the succeeding Trustee."

This provision is inapplicable, however, because Lisa did not die, resign, or become incapacitated.

[12] General Laws c. 203E, § 701 (b), provides, in pertinent part, that "[a] designated trustee who does not accept the trusteeship within a reasonable time after knowing of the designation shall be deemed to have rejected the trusteeship."

[13] Although the MUTC's notice provisions have no effect on James's resignation, an action which occurred prior to the effective date of the MUTC, see note 9, supra, we note that § 705 (a) of the MUTC now imposes limited notice requirements on a trustee who resigns. The notice required varies with the type of trust. Section 705 provides in full:

ramifications of James's failure to notify Lisa of the vacancy would be with respect to Santander's rights under the mortgage, because we conclude that James lacked the authority to reappoint himself as trustee.

Answering the question of James's authority to reappoint himself as trustee requires us to interpret the language of the trust, looking to the plain language of the trust. See Ferri, 476 Mass. at 654. Furthermore, "we do not read words in isolation and out of context. Rather we strive to discern the settlor's intent from the trust instrument as a whole and from the circumstances known to the settlor at the time the

---

> "(a) A trustee may resign:
>
>> "(1) upon at least 30 days' notice to: (i) the settlor and all co-trustees of the trust, in the case of a revocable trust, and (ii) the qualified beneficiaries and all co-trustees of the trust, in the case of any other trust; or
>>
>> "(2) with the approval of the court.
>
> "(b) In approving a resignation, the court may issue orders and impose conditions reasonably necessary for the protection of the trust property.
>
> "(c) Any liability of a resigning trustee or of any sureties on the trustee's bond for acts or omissions of the trustee shall not be discharged or affected by the trustee's resignation."

We note further that, even if § 705 (a) did apply, the notice would not need to be provided to Lisa in her capacity as a beneficiary, as this was a revocable trust. See § 705 (a) (1), supra.

instrument was executed."  Hillman v. Hillman, 433 Mass. 590, 593 (2001).

Santander relies on Article 9 of the trust, which provided that "[James] shall serve as Trustee during the entire duration of this trust or so long as he shall be able to discharge the duties thereof" to argue that the language stating that James "shall serve" allowed him to resign and reappoint himself as trustee whenever he so desired.

Santander's argument founders because its interpretation of the trust takes this language out of context.  The trust provided a mechanism whereby James was permitted to resign if he was no longer willing or able to serve as trustee, as well as instructions for appointment of a successor trustee.  There is no dispute that James resigned.  The trust then clearly provided that Lisa was to become the successor trustee or, in the event of Lisa's death, resignation, or incapacity (none of which occurred here), that the trust beneficiaries were to appoint a new trustee.  The trust did not include an option allowing James to reappoint himself as trustee.  The language of the trust is plain and unequivocal in this respect and does not "support a reasonable difference of opinion as to the meaning of the words employed" (citation omitted).  Ferri, 476 Mass at 654.

We have determined that, under the plain terms of the trust, James was not permitted to reappoint himself.  We make

this determination as a matter of the common law of trusts, see Ferri, 476 Mass at 654; Hillman, 433 Mass. at 593, applicable to actions which preceded the effective date of the MUTC.  See note 9, supra.

For purposes of clarity on remand, we next turn to the applicability of G. L. c. 203E, § 704 (c), with respect to any future appointment of a trustee.  While the MUTC is inapplicable to acts taken before its effective date, it remains applicable to trusts created before or after its effective date and to "all judicial proceedings concerning trusts commenced on or after the effective date."  St. 2012, c. 140, § 66 (a).[14]  See note 9, supra.  We therefore address the MUTC's command to appoint a successor trustee "designated by the terms of the trust," G. L.

---

[14] The full text of St. 2012, c. 140, § 66, provides:

"(a) Except as otherwise provided in this act:

"(1) this act shall apply to all trusts created before, on or after the effective date of this act;

"(2) this act shall apply to all judicial proceedings concerning trusts commenced on or after the effective date;

"(3) an action taken before the effective date of this act shall not be affected by this act.

"(b) If a right is acquired, extinguished or barred upon the expiration of a prescribed period that has commenced to run under any other statute before the effective date of this act, that statute shall continue to apply to the right even if it has been superseded."

c. 203E, § 704 (c) (1), in light of the trust language, which remained unchanged both before and after the effective date of the MUTC.

Section 704 (c) (1) of the MUTC states that a vacancy first "shall" be filled "by a person designated by the terms of the trust to act as successor trustee." James was the original trustee, not a successor trustee. Indeed, Santander's argument relies on the fundamental assumption that James "resumed" his trusteeship. Like the trust, the statute makes no room for resumption of the trusteeship after resignation; rather, the statute enforces the terms of the trust. Therefore, under both the trust and the statute, James has no present or future right to reappointment under § 704 (c) (1). We express no opinion as to the appointment of a successor trustee or other fiduciary pursuant to the trust and the MUTC. See G. L. c. 203E, § 704 (c) (2), (3); G. L. c. 203E, § 704 (d).

2. Validity of mortgage when given. For the first time on appeal Santander maintains that the mortgage is nonetheless binding on the trust because James's resignation was noted only on a separately recorded document. Santander relies on G. L. c. 184, § 34, which includes the following provision:

> "Any recordable instrument purporting to affect an interest in real estate executed by any person or persons who, in the records of the registry of deeds for the county or district in which the real estate lies, are or appear to be the trustees of a trust shall be binding on the trust in

> favor of a purchaser or other person relying in good faith on such instrument, notwithstanding . . . (b) any amendment, revocation, removal or resignation of trustee, appointment of additional trustee, or other matter affecting the trust, unless the same is recorded in said registry of deeds and noted on the margin of said trust in said registry."

Santander contends that, according to the plain language of § 34, the mortgage is binding on the trust because James's resignation was not noted on the margin of the trust in the registry of deeds. Lisa, however, asserts that "handwritten references in the margins of trust or other documents have been abandoned" due to technological advances, and she urges a more flexible interpretation of the statute that comports with the goal of notice.

While we may affirm on any ground supported by the summary judgment record, see Brangan v. Commonwealth, 477 Mass. 691, 697 n.12 (2017), there is an insufficient basis to affirm on this alternative theory. Dueling briefs paint divergent pictures of how such a notation could or could not be made. Briefs are not a substitute for facts, however. Santander has not addressed, and there are no facts in the summary judgment record regarding, good title practice, how notations were made on recorded documents, or the title search results that would have appeared in 2008 when James executed the mortgage "as trustee." See, e.g., Dalessio, 57 Mass. App. Ct. at 472-474. As a result, Santander has not met its burden on summary judgment because the

record does not include admissible evidence regarding whether the practice of making margin notes on recorded documents had been followed or abandoned by 2008, or whether it was possible to make margin notes in 2008.  See generally Khalsa, 88 Mass. App. Ct. at 828-829.  In the absence of a factual record properly presented to the motion judge, we decline to address this issue, raised for the first time on appeal.

Conclusion.  We vacate so much of the judgment as declared that the mortgage was valid on the basis of estoppel by deed and that dismissed Santander's counterclaim for unjust enrichment as moot, and we remand for further proceedings consistent with this opinion.

So ordered.