NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-138

SONA PILLAI

vs.

DAVID A. SCALIA & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This case involves a dispute over ownership of a property in Westford. Christine Bohenko, her then husband Gregory Bohenko, and her mother Priscilla Scalia acquired the property in 1993 via a deed granting it to them "as joint tenants." In 2002 Gregory[2] deeded his interest in the property to Christine. Priscilla later died, and Christine then sold the property to the plaintiff, believing that she (Christine) became its sole owner upon Priscilla's death.

Several years after purchasing the property, the plaintiff became aware of a potential defect in her title stemming from the 2002 deed. The plaintiff brought this suit as a result,

---

[1] John Scalia, Christine Bohenko, and the unknown heirs and devisees of Priscilla Scalia.

[2] Because some of the parties and relevant actors share surnames, we use their first names to avoid confusion.

seeking a declaratory judgment to establish her ownership of the property and a judgment quieting her title. Priscilla's sons, defendants David A. Scalia and John Scalia (together, the defendants),[3] each answered and David counterclaimed, alleging that Priscilla's interest in the property remained part of her estate and was conveyed to them through her will. A Superior Court judge granted summary judgment for the plaintiff, and the defendants appeal. They argue that the 1993 deed did not create a joint tenancy between Christine and Priscilla; that, even if it did, the 2002 deed severed the joint tenancy; and that the plaintiff was not a bona fide purchaser. We affirm.[4]

Background. The basic facts are not in dispute. On October 27, 1993, Christine, Gregory, and Priscilla acquired title to the property via quitclaim deed. The deed states that the grantor conveyed the property "to PRISCILLA SCALIA, CHRISTINE BOHENKO AND GREGORY BOHENKO, as joint tenants." The phrase "as joint tenants" appears in handwriting in the margin on the right side of the deed.

---

[3] Christine and the unknown heirs and devisees of Priscilla are not parties to this appeal.

[4] Although the defendants also appealed from the denials of their motion to add a party and their motion to reconsider or to alter or amend the judgment, they have not briefed those issues, which are thus waived. See Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019); Mendoza v. Licensing Bd. of Fall River, 444 Mass. 188, 194 n.10 (2005).

At some point thereafter, Christine and Gregory divorced. Pursuant to their divorce settlement, Gregory executed a quitclaim deed on September 10, 2002, granting "all [his] right, title and interest in and to" the property to Christine.

Priscilla died in March 2012.  She left a will, which gave her interest in the property to the defendants, "but only if [she] ha[d] an interest in that property at the time of [her] passing."  Over six years later in September 2018, Christine sold the property to the plaintiff.  Christine attested in an affidavit that she believed she became the sole owner of the property upon Priscilla's death by operation of the joint tenancy.

When the plaintiff attempted to refinance her mortgage in 2021, an attorney for the lender notified her of a possible title defect resulting from the 2002 transaction between Christine and Gregory.  This was the first time that the plaintiff was made aware of any title issues with the property. She proceeded to file the underlying complaint and then moved for summary judgment.  In allowing her motion, the judge first determined that the plain language of the 1993 deed created a joint tenancy among Christine, Gregory, and Priscilla.  The judge next determined that, while Gregory's conveyance of his interest to Christine in 2002 terminated the joint tenancy, there was no genuine dispute of fact that Christine and Gregory

3

intended for the joint tenancy between Christine and Priscilla to remain intact; the judge thus ordered that the 2002 deed be reformed to identify the grantees as "CHRISTINE BOHENKO AND PRISCILLA SCALIA, as joint tenants." Last, the judge concluded that the plaintiff was a bona fide purchaser. Judgment for the plaintiff entered accordingly, and this appeal by the defendants followed.

Discussion. We review a grant of summary judgment de novo, viewing the facts in the "light most favorable to the nonmoving party" and "drawing all reasonable inferences" in the nonmoving party's favor. Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 38 (2005). Summary judgment is "appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Federal Nat'l Mtge. Ass'n v. Rego, 474 Mass. 329, 332 (2016).

1. The 1993 deed. The defendants contend that the 1993 deed established a joint tenancy only between Christine and Gregory and that Priscilla was a tenant in common, allowing her interest in the property to pass through her will. In interpreting a deed, we "must construe all words that are plain and free from ambiguity according to their usual and ordinary sense." Boston Redevelopment Auth. v. Pham, 88 Mass. App. Ct. 713, 717-718 (2015), quoting Suffolk Constr. Co. v. Lanco Scaffolding Co., 47 Mass. App. Ct. 726, 729 (1999). A joint

4

tenancy will be given effect when it "plainly appears from the deed . . . that the grantor . . . intended that the survivors should take the whole."  Cross v. Cross, 324 Mass. 186, 188 (1949).  See Battle v. Howard, 489 Mass. 480, 483-484 (2022) ("Upon the death of one joint tenant, sole ownership of the property automatically vests in the surviving tenant").

We agree with the judge that the plain language of the 1993 deed -- conveying the property to "PRISCILLA SCALIA, CHRISTINE BOHENKO AND GREGORY BOHENKO, as joint tenants" -- "clearly express[ed] an intent to create a joint tenancy" as to all three of them.  Burghardt v. Turner, 29 Mass. 534, 538 (1832). Contrary to the defendants' assertion, the location of the phrase "as joint tenants" in the right margin of the deed does not change the plain import of these words.  Absent language indicating otherwise, we must construe the joint tenancy as applying to all of the named grantees.  See G. L. c. 184, § 7 ("In a conveyance or devise to three or more persons, words creating a joint tenancy shall be construed as applying to all of the grantees . . . unless a contrary intent appears from the tenor of the instrument").

The defendants also appear to argue that there is a dispute of fact as to whether the parties to the 1993 transaction intended to create a joint tenancy.  They rely in particular on two mortgages that Christine and Priscilla executed in 2002 and

5

2003, which do not mention a joint tenancy.  But putting aside that the mortgages reference no tenancy at all and thus have questionable relevance, if any, to Christine and Priscilla's intent, we cannot consider parol evidence to create an ambiguity in the deed when its language is unambiguous.  See Panikowski v. Giroux, 272 Mass. 580, 582 (1930) (parol evidence inadmissible to modify description in deed that was "clear, explicit and free from ambiguity").

2.  The 2002 deed.  The defendants next argue that the judge improperly reformed the 2002 deed to keep the joint tenancy intact.  As mentioned, reformation is an issue only because the judge concluded that Gregory's conveyance of his interest in the property to Christine severed the joint tenancy among all the grantees.  Although no party challenges this conclusion, we question whether it is correct.  Generally, "[a] joint tenancy is severed when any one of the four unities [the unity of interest, the unity of title, the unity of time, and the unity of possession] is destroyed, including due to a unilateral act of one of the parties."  Battle, 489 Mass. at 484.  But where, as here, there were more than two joint tenants, the authorities suggest that a conveyance by one tenant does not affect the joint tenancy among the remaining tenants.  See, e.g., Foster v. Smith, 211 Mass. 497, 503 (1912) ("a conveyance by one of three joint tenants of his interest does

6

not affect the joint tenancy of the other two"); Jackson v. O'Connell, 23 Ill. 2d 52, 57 (1961), quoting 2 American Law of Property § 6.2 (A.J. Casner ed. 1952) ("Where one joint tenant conveys to one of his cotenants, where there are more than two, the cotenant grantee holds the share conveyed as a tenant in common . . . while his original share is held with the remaining cotenants as a joint tenancy").  Accord American Nat'l Bank & Trust Co. of Shawnee v. McGinnis, 571 P.2d 1198, 1199 (Okla. 1977); 7 R. Powell, Real Property § 51.04[1], at 51-19 (M. Wolf ed. 2023).  And if that is the case, Christine would have owned the property outright upon Priscilla's death because Priscilla's one-third interest would have passed to her as the surviving joint tenant.  See Battle, supra at 483-484.

We need not decide this question, however, because even assuming that the 2002 transaction severed the joint tenancy between Christine and Priscilla, the defendants have not shown that the judge erred in reforming the deed.  Reformation is an equitable remedy, available to correct language in an instrument that does "not reflect [the parties'] true intent."  Mickelson v. Barnet, 390 Mass. 786, 791 (1984).  To be entitled to reformation, the party requesting it must prove a mutual mistake or a mistake by one party known to the other.  See Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 756 (1993).

7

Here, the undisputed facts demonstrate that Christine and Gregory did not intend for their transaction to sever the joint tenancy between Christine and Priscilla. In support of her summary judgment motion, the plaintiff submitted an affidavit from Christine, in which she averred that "the deed from Gregory was only intended to grant his interest in the [p]roperty to [her]" and that "it was not intended to change the fact that [Priscilla] and [Christine] would own as joint tenants so that when one . . . died, the other would be the sole owner." As the judge observed, this affidavit is the only material evidence in the record regarding the intent of the parties to the 2002 transaction. The defendants do not point to any contrary evidence, nor do they contest that the affidavit established that any severance of the joint tenancy resulted from a mutual mistake between Christine and Gregory. Thus, because "the expected legal consequences were not provided for in the deed," the plaintiff was "entitled to have the deed reformed to carry out the expressed intent of the parties." Franz v. Franz, 308 Mass. 262, 267 (1941).

We are unpersuaded by the defendants' suggestion that the plaintiff had the burden of showing that Priscilla herself intended for the joint tenancy to survive the 2002 deed. Priscilla was not a party to the 2002 transaction, and the defendants do not explain why the intent of a nonparty matters

8

in determining whether an instrument should be reformed.  The one case they cite in support, La Fleur v. C.C. Pierce Co., 398 Mass. 254, 257-258 (1986), states to the contrary that the relevant inquiry is whether "there has been a mistake between the parties as to the subject matter of a contract."  See Caron v. Horace Mann Ins. Co., 466 Mass. 218, 223 (2013) ("The mutual mistake doctrine exists to effectuate the agreement intended by the parties to a contract").  The defendants' bare assertion otherwise does not rise to the level of adequate appellate argument.  See Mass. R.A.P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019); Tinsley v. Framingham, 485 Mass. 760, 766 n.13 (2020).

Likewise, to the extent the defendants contend that a deed can only be reformed to fix technical mistakes, such as problems with boundary lines and scrivener's errors, they cite no authority to support that proposition, which appears to contradict longstanding case law.  See, e.g., Mickelson, 390 Mass. at 791-792 (reformation available to correct mistakes of law); Franz, 308 Mass. at 265-267 (wife entitled to have deed conveying property to "husband and wife, as joint tenants" reformed to state "as joint tenants, but not as tenants by the entirety").  Thus, this assertion too fails to rise to the level of adequate appellate argument.

9

3. Bona fide purchaser. Finally, the defendants challenge the plaintiff's status as a bona fide purchaser.[5] A bona fide purchaser is one who buys land for value without notice or knowledge of any defect. See Bevilacqua v. Rodriguez, 460 Mass. 762, 777 (2011). At the summary judgment stage, once the moving party affirmatively demonstrates that there is no genuine issue of material fact regarding bona fide purchaser status, the burden shifts to the nonmoving party to establish the existence of a genuine issue. See Buk Lhu v. Dignoti, 431 Mass. 292, 295 (2000).

The defendants' only argument on appeal as to why the plaintiff was not a bona fide purchaser is that she was purportedly on constructive notice of the title issue stemming from the 2002 deed. But again, the defendants have not supported their argument with any relevant legal authority and have thus waived it. In any event, waiver notwithstanding, we see no basis for imputing constructive notice to the plaintiff. Constructive notice arises "by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of, such as a registered deed." Bank of Am., N.A. v. Casey, 474 Mass. 556, 567 n.21 (2016), quoting Black's Law

---

[5] The parties appear to agree that bona fide purchaser status is a prerequisite to quieting title. We will assume, without deciding, that this is correct.

10

Dictionary 1227 (10th ed. 2014). Purchasers are not on constructive notice of a title defect unless they could have discovered it "by means of a search conducted in the conventional method." Dalessio v. Baggia, 57 Mass. App. Ct. 468, 473-474 (2003), quoting 4 American Law of Property § 17.17 (A.J. Casner ed. 1952). In other words the defect must be ascertainable through "reasonable title examination." Devine v. Nantucket, 449 Mass. 499, 513 (2007).

The record here presents no genuine dispute that the plaintiff conducted a reasonable title examination when she purchased the property. The plaintiff obtained a mortgage loan and title insurance in connection with the purchase. A title search conducted by the lender's closing attorney did not uncover any defect, and the title policy did not list any encumbrance other than the mortgage. Likewise, when the plaintiff refinanced her mortgage in 2020, the title policy issued to the new lender did not identify any defect. These facts are undisputed, and the defendants offered no evidence to show that the plaintiff did not comply with standard title examination practices. They have thus failed to establish a genuine dispute of fact with regard to constructive notice. See Dalessio, 57 Mass. App. Ct. at 473 (purchaser not on constructive notice of defect that would have required "burdensome investigation" to uncover it).

11

Conclusion. The judgment is affirmed. The orders denying the defendants' motion to add a party and their motion to reconsider or to alter or amend the judgment are affirmed.

So ordered.

By the Court (Wolohojian, Neyman & Shin, JJ.[6]),

*Anne M. Thomas*

Assistant Clerk

Entered: February 8, 2024.

---

[6] The panelists are listed in order of seniority.